704 So.2d 851 (1997)
Tanya BENINATE
v.
WAL-MART STORES, INC.
No. 97-CA-802.
Court of Appeal of Louisiana, Fifth Circuit.
December 10, 1997.
I. Rene Derojas, Campbell, McCranie, Sistrunk, Anzelmo & Hardy, Metairie, for Defendant/Appellant Wal-Mart Stores, Inc.
G. Michael Grosz, III, Peyton B. Burkhalter, Gretna, for Plaintiff/Appellee Tanya Beninate.
Before BOWES, CANNELLA and DALEY, JJ.
*852 BOWES, Judge.
Defendant/appellant, Wal-Mart Stores Inc., appeals a judgment of the district court in favor of plaintiff, Mrs. Tanya Beninate, awarding her damages in the amount of $3,417.26; these damages were reduced by 25%, which was the percentage of negligence attributed by the trial court to the plaintiff.
Mrs. Beninate filed a petition for damages and personal injuries sustained when she slipped and fell in the Wal-Mart Store on Veterans Highway in Jefferson Parish. It was alleged in the petition that after shopping, she slipped on a foreign substance located on the floor, suffering severe and disabling injuries. Suit was filed in the First Parish Court for the Parish of Jefferson. Following trial on the merits, the court granted judgment in favor of plaintiff, assessing a portion of the fault to the plaintiff. Plaintiff has answered the appeal.

EVIDENCE AND TESTIMONY
At trial, Mrs. Beninate testified that on November 15, 1994, she was doing some Christmas shopping at Wal-Mart where she purchased a bicycle for her daughter. After checking out, she pulled the bicycle back through the store toward the garden entrance where she had parked. As she was walking in the main aisle, her feet slipped from under her and she fell. The main aisle was divided by merchandise and shelves. She was directly in front of the McDonald's Restaurant located in the store; she saw that she had slipped on a smashed french fried potato. When asked if she noticed anything about the area around the potato, she stated that:
... it was a black area. I really didn't know what it was, but I could see that there was track marks along that area right there. I guess from shopping carts or something.
She was embarrassed when she fell and threw the potato away. She reported the incident to Tony Lansome, the "door greeter." However, no one took a report from her that evening nor did anyone contact her about the accident.
The next morning she woke up, her knee was badly bruised and her neck and shoulder were very stiff. Her primary care physician, Dr. David Learned, prescribed muscle relaxers and anti-inflammatories and, at some point, physical therapy. She received physical therapy twice a week for three weeks.
After seeing her primary care physician two or three times, she was referred to an orthopedist, Dr. Cazale. Dr. Cazale told her there wasn't anything he could do, that it would just take time to heal. She kept a record of time lost from work because of the accident, which was admitted at trial, showing a total of 89.75 hours missed. She missed work on days when she did not feel well, for doctor's appointments and physical therapy.
On cross-examination, Mrs. Beninate admitted that she did not see the potato before she fell, and did not know how long it had been on the floor prior to her fall. She did not see any Wal-Mart employees in the vicinity of her fall. The day after the accident, she reported the incident, saying that she had slipped and the floor was very dirty; and she could not remember whether she mentioned the potato. Upon questioning from the court, she testified that she was wearing low heel shoes.
The parties stipulated that the total in medical bills was $1,550.00. Medical records admitted at trial showed that Dr. Cazale diagnosed a cervical strain and a possible strain to the trapezius muscle. He had nothing to offer from an orthopedic standpoint.
Mr. Anthony Lansome, an employee of defendant who works at the exit door, testified that he knew the plaintiff, who worked nearby. He thought that on the evening in question, there was only one janitor on duty at the store between 6:00 and 7:00 p.m. On her way out of the store that evening, plaintiff reported to him that she had almost slipped down; he went to the area which she had described, meeting the maintenance employee there, but they did not see anything. Any employee who sees a spill is supposed to clean it up, according to instructions from Wal-Mart.
*853 Ms. Suzanne Thompson, who was an assistant manager at the store on the night in question, testified that she was assigned to the Apparel Department which is located on the opposite side of the store from McDonald's; nevertheless, her responsibility is to the entire store, not just that department. As assistant manager, she walked every aisle of the store all the time, although there were no regular intervals for doing so. She could not say how many times she had walked the area on the night in question, but did not recall seeing anything on the floor that night in front of McDonald's. She was not aware of any policy of Wal-Mart relative to customers bringing food outside of the restaurant area. She regularly saw children in the store with french fries and other foods. She, herself, did not investigate the accident.
She also stated that the janitorial staff is charged with cleaning the bathrooms every hour and it is the responsibility of Wal-Mart to maintain the area in front of the restaurant. There was one janitor on duty at the time of the accident. The employees of the Health and Beauty Aids Department, closest to the restaurant, would also be responsible to inspect the main aisle in front of McDonald's. However, there are displays in the middle of the aisle which could obstruct their view.
Steven Riddle, also an assistant store manager, testified that he was not on duty on the night in question. However, he stated that at the time and date of the accident, there would have been more shoppers in the store than at other times because of holiday shopping. He also said that there were no specific times or regular intervals to walk the main aisles of the store for inspection. There are several displays in the main aisle and it would be the primary responsibility of the department employees to maintain those displays. There is no regular interval at which an assistant manager would traverse the area in front of McDonald's. There is no maintenance documentation to show when an area was last mopped or swept. There are many employees from many departments who must travel the area in a given day, which is referred to by the employees as "Action Alley." In conclusion, he said that Wal-Mart does allow people in the store with food and beverages.
On cross-examination, Mr. Riddle testified that employee/associates are instructed about maintenance via a safety video and a handbook; they are also trained via computers. Once a hazardous condition is encountered, the employee is to stand guard in the area, then to look for someone to help him. At the time in question, the maintenance worker, or janitor, on duty would have been charged with making an hourly "safety sweep" around the store. In each department, the associate in that department is charged with responding to any unsafe or hazardous conditions in the department. It is an ongoing process, but there are also specific times to "zone" (check) the area because the department managers are instructed to "zone" their areas when they arrive, go on breaks, and before they depart for the day.
Mr. Riddle continued stating that on the day following the accident in question, Mrs. Beninate reported the incident to him, and he prepared an accident report. Plaintiff told him that she slipped while taking a bike toward the front checkout area. She told him, after specific questioning, that she did not see anything that she had slipped on, and was un aware of any substance on the floor which could have contributed to her fall. He concluded by saying that the only employee who had knowledge of the incident was Mr. Lansome.
Oscar Curry, a private investigator, took photographs at the store in May, 1996. During the three occasions he was in the store, he stated that he did not see any Wal-Mart employees in and around the McDonald's area. On all the occasions, there was debris on the floor around the McDonald's area such as paper, portions of food, and spilled beverages. The witness stated that he observed several Wal-Mart employees traverse the area while the debris was present. The aisle entrance to the restaurant is divided by display racks; customers use one side of the aisle to leave their baskets before going into the restaurant, while most of the employees use the other side of the aisle because it was less restricted. The McDonald's employees appeared to clean up the area inside *854 the restaurant, and were more diligent in the daytime than on the night shift.
On cross-examination, the witness admitted that he did not have knowledge of the conditions in the store on the night in question.

ACTION OF THE TRIAL COURT
In granting judgment for the plaintiff, the trial court found that plaintiff did, in fact, slip on a french fry from the McDonald's store, and that while the conduct of defendant with regard to its non-food merchandise may have been adequate, that it would be reasonably expected that open food items would be carried into, or spilled onto, the floor, especially when the only separation between the restaurant and the merchandise were garbage cans. The trial judge stated that:
Wal-Mart should have had a heightened awareness with regard to reasonable cleaning and inspection procedures in the food service area. The rationale for special rules relating to slip and fall is that the nature of self service stores entice customers to focus their attention elsewhere rather than the floor. This does not mean that the store owner is the insurer of the safety of its customers, but a reasonable effort must be made to insure a patron's safety under the circumstances. There was no evidence of reasonable inspection procedures other than one or two employees periodically passing the general area, which was a double wide aisle separated by merchandise shelving.
The court found plaintiff to be 25% at fault and, accordingly, reduced her damages by that percent in the judgment. On appeal, defendant urges that it was error for the court to find that plaintiff slipped on a foreign substance; that the court erred in finding defendant liable for damages when plaintiff produced no evidence the store created the condition or had actual or constructive knowledge of the alleged substance on the floor; that there was no evidence that the store failed to exercise reasonable care; and that the court erred in assessing plaintiff only 25% of the fault.
Plaintiff answered the appeal, contesting both liability and quantum.

ANALYSIS
La. R.S. 9:2800.6 (1991), as revised in 1990 and in effect at the time of the instant accident, provides in relevant part:
A. A merchant owes a duty to persons who use his premises to exercise reasonable care to keep his aisles, passageways, and floors in a reasonably safe condition. This duty includes a reasonable effort to keep the premises free of any hazardous conditions which reasonably might give rise to damage.
B. In a negligence claim brought against a merchant by a person lawfully on the merchant's premises for damages as a result of an injury, death, or loss sustained because of a fall due to a condition existing in or on a merchant's premises, the claimant shall have the burden of proving, in addition to all other elements of his cause of action, that:
(1) The condition presented an unreasonable risk of harm to the claimant and that risk of harm was reasonably foreseeable;
(2) The merchant either created or had actual or constructive notice of the condition which caused the damage, prior to the occurrence; and
(3) The merchant failed to exercise reasonable care.
C. Definitions:
(1) `Constructive notice' means the condition existed for such a period of time that it would have been discovered if the merchant had exercised reasonable care.
Insofar as the trial court determined that plaintiff did, indeed, slip on a foreign object, the french fry, we note that plaintiff was the only person to testify in that regard. However, no one contradicted her testimony that either she slipped on the potato, or that subsequently, she picked up and disposed of the debris. Neither of the assistant managers inspected the area immediately afterwards; Mr. Lansome checked the area with the maintenance personnel shortly after Mrs. Beninate spoke to him, but found nothing. Thus, the finding that there was a foreign *855 substance on the floor which caused the fall was not so much a credibility finding as it was essentially unrebutted testimony.
The only evidence offered by defendant in this regard was testimony about the general duties of the assistant managers to walk the floors and note any problems, and the obligations of all the employees to note any hazardous conditions. Defendant did not show that an employee had recently walked or inspected the area and found it clean, or that the maintenance employee had recently cleaned there. There was no evidence to contradict plaintiff's positive testimony on the presence of the smashed potato.
To the extent that this is a credibility determination on the part of the trial court, such determination is entitled to great weight.[1] Thus, we hold that plaintiff carried her burden of proof in this regard and the court did not err in finding that she slipped on the french fry.

CONSTRUCTIVE NOTICE
The next issue presented is that of "constructive notice." Under subsection "C" above, plaintiff had to prove that the condition existed for such period of time so as to have been discoverable by a merchant exercising reasonable care.
Our Supreme Court has very recently addressed this issue of constructive notice in White v. Wal-Mart Stores, Inc., 97-0393 (La.9/9/97), 699 So.2d 1081. In White, the Supreme Court specifically overruled Welch v. Winn-Dixie Louisiana, Inc., 94-2331 (La.5/22/95), 655 So.2d 309. In Welch, the Supreme Court had concluded that a claimant had carried her burden of proving "constructive" notice by showing the absence of written inspection procedures, the lack of written documentation of the performance of inspections, and the lack of company directives on a consistent inspection policy; this was "strong evidence of the inadequacy and unreasonableness" of the inspection procedures. The White court felt that Welch had shifted the burden to the merchant to prove that it acted reasonably. In White, the court found that: "The fatal flaw in the Welch decision is that there was no showing of any period to time as required by the statute." The White court then concluded:
Constructive notice, at issue here, is defined by Section (C)(1). The definition is likewise clear and unambiguous. There is a temporal element included: `such a period of time ...' The statute does not allow for the inference of constructive notice absent some showing of this temporal element. The claimant must make a positive showing of the existence of the condition prior to the fall....
... Though there is no bright line time period, a claimant must show that `the condition existed for such a period of time... ` Whether the period of time is sufficiently lengthy that a merchant should have discovered the condition is necessarily a fact question; however, there remains the prerequisite showing of some time period. A claimant who simply shows that the condition existed without an additional showing that the condition existed for some time before the fall has not carried the burden of proving constructive notice as mandated by the statute. Though the time period need not be specific in minutes or hours, constructive notice requires that the claimant prove the condition existed for some time period prior to the fall. This is not an impossible burden ...
The statute is clear. To prove constructive notice, the claimant must show that the substance remained on the floor for such a period of time that the defendant merchant would have discovered its existence through the exercise of ordinary care.
The court then noted several examples of cases in which this burden of proof was successfully carried. Treadaway v. Shoney's, Inc., 93-1688 (La.App. 4 Cir. 2/25/94), 633 So.2d 841; Oalmann v. K-Mart Corp., 630 So.2d 911 (La.App. 4 Cir.1993); Saucier v. Kugler, 628 So.2d 1309 (La.App. 3 *856 Cir.1993); and Cobb v. Wal-Mart Stores, Inc., 624 So.2d 5 (La.App. 5 Cir.1993).
We find the facts in the present matter comparable to the above cases in that there is evidence the hazardous condition existed for some time before the accident. Here, the plaintiff testified that the area around the potato was black, as though carts had been pushed around there. There was further testimony that food and beverage items were regularly carried onto the merchandise floor, and that the defendant had no policy against that practice and, thus (as the trial court found), it was reasonably foreseeable that food would spill onto the floor in a merchandise department. Given the testimony that the potato was on the floor and the area around it had become "black" it is apparent that either all or some of the employees failed to see what all, or certainly some, should have seen as they frequently passed in "Action Alley"  or they did nothing about it after noticing it. Certainly, this is a reasonable conclusion for the trial judge to draw (which he apparently did) from the evidence presented to him. See e.g. Cobb, supra.
Furthermore, plaintiff introduced testimony of an investigator, Oscar Curry, who provided evidence that on numerous occasions when he visited the store foreign debris such as paper, portions of food and spilled beverages were on the floor in the Wal-Mart store around the McDonald's area. He observed several Wal-Mart employees traverse the area while the debris was present and no steps were taken by them to cure the dangerous condition.
As noted in Justice Calogero's dissent in White, supra, it is nearly impossible for the customer to prove how long the specific substance which he or she fell on was present at that location. The evidence introduced here, of other examples of debris on the floor in the same area of the store for sufficient periods of time to have been discovered is circumstantial evidence which support a finding that the substance in this case was on the floor long enough that it would have been discovered if the merchant had exercised reasonable care.
Accordingly, we hold that these facts constitute the requisite "constructive knowledge" within the meaning of the statute as interpreted by the Supreme Court in White, supra, and that this is a reasonable interpretation of the evidence for the trial judge to make.
The trial court found no evidence of reasonable inspection procedures. We agree. Throughout the testimony of both Mr. Riddle and Ms. Thompson, it is clear that the employees/associates had many duties within their departments, and that the main aisle was frequented by all or nearly all of the employees as they went about their other duties. These employees were charged with correcting a hazardous situation if they noticed one, but inspection was not their chief function as they traversed "Action Alley." There was testimony that a single janitor was charged with monitoring and cleaning the entire store, including the bathrooms, once every hour but no evidence as to when this maintenance worker would have last inspected the area in front of McDonalds's. Accordingly, we cannot equate this measure with reasonable care, under the circumstances of this case in which a usually busy store is even more busy and more crowded than usual with holiday shoppers.

OUR CONCLUSION
Thus, we hold that the trial court correctly found that Wal-Mart is liable under La. R.S. 9:2800.6 for the injuries suffered by the plaintiff.

CONTRIBUTORY NEGLIGENCE OF PLAINTIFF
Plaintiff disputes in her answer the determination that she was 25% at fault in the matter. She was maneuvering a bicycle she had just bought, and was, therefore, somewhat distracted by her purchase, apparently not paying sufficient attention to her surroundings. This element of the situation (pulling the bicycle through the store) was not created by, or attributable to, the defendant. Consequently, we find no error in the trial court's apportionment of fault.

*857 GENERAL DAMAGES

Finally, plaintiff complains that the award for general damages was inadequate. We have reviewed the record, and granting to the trial court the vast discretion in assessment of damages, that the law accords it, we find no abuse of that discretion. Mrs. Beninate had four doctor visits with Dr. Learned and one consultation with Dr. Cazale, as well as some physical therapy. She suffered a cervical strain. The award of general damages granted by the trial court, while somewhat less than we might have given, is not so low as to constitute an abuse of that court's vast discretion.

DECREE
For the foregoing reasons, the judgment on appeal is affirmed. Each party is to bear its own costs of this appeal.
AFFIRMED.
NOTES
[1] We believe this rule of review to be so entrenched in our jurisprudence as to not require citation in these circumstances.