# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
February 3, 2011

Lyle W. Cayce
Clerk

No. 09-60403

CAPITAL CITY INSURANCE COMPANY,

Plaintiff–Appellee

v.

LATASHA HURST, INDIVIDUALLY AND AS ADMINISTRATRIX OF THE ESTATE OF LECEDRICK HURST; DIONDRICK HURST AND LECEDRICK HURST, MINORS BY AND THROUGH THEIR PARENT AND NATURAL GUARDIAN, LATASHA HURST,

Defendants–Appellants

Appeal from the United States District Court
for the Southern District of Mississippi

Before KING, DEMOSS, and PRADO, Circuit Judges.

EDWARD C. PRADO, Circuit Judge:

Lecedrick Hurst—husband of Latasha Hurst—was killed on October 30, 2004, when he was thrown from his vehicle after it collided with Darral Bell's vehicle. Minutes before the collision, Hurst and Bell had an altercation at an acquaintance's house during which Hurst slapped and threatened Bell. A jury convicted Bell of manslaughter, without malice aforethought, in the heat of passion. Latasha Hurst brought a wrongful death action against Bell and, *inter alia*, his employer, Pinewood Logging, Inc. ("Pinewood"), as Bell was driving a Pinewood-owned vehicle when the collision occurred. Capital City Insurance Company ("Capital City") had previously issued Pinewood a commercial

No. 09-60403

automobile insurance policy ("the Policy"), and filed the instant suit seeking a declaratory judgment that the October 30, 2004 collision was excluded from the Policy's coverage under its "expected or intended injury" exclusion. The district court granted Capital City's motion for summary judgment, from which defendants appeal. We affirm the district court.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On October 30, 2004, Lecedrick Hurst and Bell got into an argument at an acquaintance's home in Gloster, Mississippi, during which Hurst struck Bell and each threatened the other. After being asked to leave the premises, Bell departed in his Pinewood-owned Ford F-350 truck and Hurst followed him in his Yamaha four-wheeled vehicle. At some point Hurst drove alongside Bell in an apparent attempt to pass Bell and the cars collided, throwing Hurst out of his vehicle. Hurst died from his injuries.

Bell was indicted on murder charges on March 9, 2005, and was tried on May 16–18, 2006. The jury was given instructions on murder and manslaughter, and was told it could consider whether Hurst's death was an accidental homicide and find Bell not guilty. The murder instruction read:

> Darral Bell has been charged with the offense of murder. If you find from the evidence in this case beyond a reasonable doubt that:
>
> 1. Darral Bell, on or about October 30, 2004, in Amite County, Mississippi;
>
> 2. Wilfully, with a deliberate design to effect the death of Lecedrick Hurst, killed the said Lecedrick Hurst by running over him with a truck; and
>
> 3. Darral Bell was not acting in self-defense
>
> then you shall find the defendant guilty as charged.

2

No. 09-60403

If the prosecution has failed to prove any one or more of the above listed elements beyond a reasonable doubt, then you shall find Darral Bell not guilty of murder.

The court's "deliberate design" instruction provided that:

"[D]eliberate design" . . . means an intent to kill without authority of law, and not being legally justifiable, or legally excusable. "Deliberate" always indicates full awareness of what one is doing, and generally implies careful and unhurried consideration of the consequences. "Design" means to calculate, plan, or contemplate. "Deliberate design" to kill a person may be formed very quickly, and perhaps only moments before the act of killing the person. However, a "deliberate design" cannot be formed at the very moment of the fatal act.

The instructions further provided that if the jury found Bell not guilty of murder, then they should continue deliberating and consider whether he is guilty of manslaughter. The manslaughter instruction provided that:

"[M]anslaughter is the killing of a human being, without malice aforethought, and in the heat of passion by the use of a deadly weapon, without authority of law. Thus, if you find from the evidence, that the State has proven beyond a reasonable doubt all of the following material elements that:

1. The defendant, Darral Bell, did wilfully, feloniously and without authority of law and without malice aforethought, in the heat of passion, with the use of an automobile, did run over and kill Lecedrick Hurst, a living person, and further,

2. That the defendant, Darral Bell, had the mental capacity to realize and appreciate the nature and quality of his acts and to distinguish right from wrong at the time he committed these acts;

Then you shall find the defendant, Darral Bell, guilty of manslaughter.

However, if the State has failed to prove any one of the elements of the charge of manslaughter beyond a reasonable doubt, you may

3

No. 09-60403

consider whether the death of Lecedrick Hurst was an accidental homicide.

A separate instruction further clarified that if the State failed to meet its burden in proving manslaughter, without malice, in the heat of passion, the jury was to find Bell not guilty of manslaughter. The instructions elsewhere stated that "[a] killing, even though intentional, committed on impulse in the heat of passion is without deliberation and without malice aforethought," that malice aforethought required "premeditation and deliberation," and that deliberation requiring "giv[ing] consideration to the intent to kill." The verdict form gave the jury the option of finding Bell guilty of murder, manslaughter, or not guilty.

The jury returned a verdict of not guilty on the murder instruction and guilty on the manslaughter instruction. Bell's conviction was affirmed by the Mississippi Supreme Court. *Bell v. State*, 963 So. 2d 1124 (Miss. 2007).

Latasha Hurst filed a wrongful death suit on April 4, 2005, against Bell and others, including Pinewood. On June 22, 2005, Capital City filed a declaratory judgment action in district court.[1] While Capital City agreed to defend Pinewood in the wrongful death case, Capital City sought a declaration that there was no coverage under the Policy for the collision that killed Lecedrick Hurst. Specifically, the Policy provides that:

> We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto".

The Policy defines "accident" as "includ[ing] continuous or repeated exposure to the same conditions resulting in "bodily injury" or "property damage." The

---

[1] Darral Bell is also named as a defendant in the instant action. He never filed an Answer, and the clerk entered default against him on August 22, 2008. Not relevant to this appeal is Darral Bell's October 16, 2006 Chapter 7 bankruptcy filing in federal court. While the bankruptcy case resulted in the instant action being dismissed on June 29, 2007, it was reinstated on December 17, 2007, after the bankruptcy court lifted its automatic stay.

4

No. 09-60403

Policy has a series of exclusions, including excluding coverage for "'[b]odily injury' or 'property damage' expected or intended from the standpoint of the 'insured.'"

Capital City filed a motion for summary judgment on September 22, 2008, arguing that the manslaughter conviction collaterally estopped the defendants—the plaintiffs in the wrongful death action—from re-litigating the question of whether Bell intended to cause Lecedrick Hurst's death. The district court granted the motion on February 25, 2010, noting that Bell made a voluntary statement to police that was admitted at trial that he was driving in the middle of the road to prevent Hurst from passing him. While never expressly analyzing the preclusive effect of the prior conviction, the district court concluded Bell's conduct was intentional and therefore excluded from the Policy's coverage. Defendants timely appealed.

## II.  JURISDICTION AND STANDARD OF REVIEW

Subject-matter jurisdiction in this case is based on diversity of citizenship, and we apply the substantive law of the forum state—in this case Mississippi—to determine the conviction's preclusive effect on litigation over the Policy's coverage for the October 30, 2004 accident. *See Ideal Mut. Ins. Co. v. Last Days Evangelical Ass'n*, 783 F.2d 1234, 1240 (5th Cir. 1986) (stating that a federal court applies the substantive law of the forum state in a diversity action).

We review "'the grant of summary judgment *de novo*, applying the same standards as the district court.'" *In re Egleston*, 448 F.3d 803, 809 (5th Cir. 2006) (quoting *In re Intelogic Trace, Inc.*, 200 F.3d 382, 386 (5th Cir. 2000)). Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "We construe all facts and inferences in the light most favorable to the nonmoving party when reviewing grants of

No. 09-60403

motions for summary judgment." *Murray v. Earle*, 405 F.3d 278, 284 (5th Cir. 2005) (citation omitted).

### III.  ANALYSIS

The Full Faith and Credit Act, 28 U.S.C. § 1738, requires federal courts to give the same preclusive effect to state court judgments that those judgments would receive in the courts of the state from which the judgments emerged. *Raju v. Rhodes*, 7 F.3d 1214 (5th Cir. 1993).  In Mississippi, collateral estoppel requires that four elements be satisfied: "(1) A party must be seeking to relitigate a specific issue; (2) that issue already had been litigated in a prior lawsuit; (3) that issue actually was determined in the prior lawsuit; and (4) that determination of the issue was essential to the judgment in the prior lawsuit." *Id.* at 1215 (citing *Dunaway v. W.H. Hopper & Assocs.*, 422 So. 2d 749, 751 (Miss. 1982)).  While Mississippi requires identity of the parties, "strict identity of parties is not necessary for either res judicata or collateral estoppel to apply, if it can be shown that a nonparty stands in privity with the party in the prior action." *EMC Mortg. Corp. v. Carmichael*, 17 So. 3d 1087, 1090–91 (Miss. 2009).

Appellants frame their appeal as raising two issues: (1) whether Bell's driving in the middle of the road to stop Hurst was, as the district court stated, an "intentional act" which precludes coverage under the Policy; and (2) whether the criminal manslaughter conviction precludes further litigation on the question of whether Bell's conduct was an intentional act under the Policy. Appellants essentially argue in both issues that there is a question of fact remaining as to whether Bell intended to kill Hurst, and that Mississippi insurance law requires specific intent to injure—or, in this case, kill—in order for the Policy's coverage exemption for "expected or intended" bodily injury to apply.

Appellants seriously misunderstand the crime of which Bell was convicted. Under Mississippi law, heat-of-passion manslaughter is a lesser-included

offense of murder because it lacks malice, not willfulness. While the jury determined that Bell did not act "[w]ilfully, with a deliberate design to effect [Hurst's] death" or with "premeditation and deliberation," it did find Bell guilty of manslaughter on a theory that he killed Hurst "*wilfully . . .* without malice aforethought, in the heat of passion," and that he had the "mental capacity to realize and appreciate the nature and quality of his acts." (Emphasis added.) As appellants themselves recognize, "[h]eat-of-passion manslaughter requires a state of violent and uncontrollable rage engendered by a blow or certain other provocation given, which will *reduce a homicide from the grade of murder* to that of manslaughter." *Neal v. State*, 15 So. 3d 388, 408 (Miss. 2009) (quoting *Hobson v. State*, 730 So. 2d 20, 26–27) (Miss. 1998) (emphasis added) ( internal quotation marks and citations omitted); *see* MISS. CODE ANN. § 97-3-35 (defining "heat-of-passion" manslaughter as: "The killing of a human being, without malice, in the heat of passion, but in a cruel or unusual manner, or by the use of a dangerous weapon, without any authority of law, and not in necessary self-defense").

That "passion usurped the mind and destroyed" Bell's judgment when he killed Hurst, *Jones v. State*, 39 So. 3d 860, 867 (Miss. 2010), rather than killing Hurst after "some appreciable time for reflection and consideration," does not make Bell's actions any less willful or intentional. *See Sanders v. State*, 781 So. 2d 114, 119 (Miss. 2001) (upholding the district court's refusal to instruct the jury on culpable negligence manslaughter and instead instructing on, *inter alia*, heat-of-passion manslaughter, when "[a]ll the testimony was that [the defendant] *intentionally* hit [the decedent] in the head with a hammer") (emphasis added)*; Graham v. State*, 582 So. 2d 1014, 1018 (Miss. 1991) (internal quotation and citation omitted); *see also Wade v. State*, 748 So. 2d 771 (Miss. 1999) (finding woman who willfully and intentionally shot and killed assailant shortly after being brutally beaten was guilty of heat-of-passion manslaughter,

not murder).  Heat-of-passion manslaughter is not the same as an accidental or negligent killing.

Section 97-3-47 of the Mississippi Code, cited by appellants, is a general involuntary manslaughter statute.  MISS. CODE ANN. § 97-3-47 ("Every other killing of a human being, by the act, procurement, or culpable negligence of another, and without authority of law, not provided for in this title, shall be manslaughter.").  This statute applies when the *killing* is not willful.  *See Tait v. State*, 669 So. 2d 85 (Miss. 1996) (finding willful act of pointing gun at the decedent's head, resulting in its firing and killing the decedent, even when the firing is accidental, supports conviction under § 97-3-47 due to culpable negligence).  That willful *acts* can cause a negligent, unintentional killing and support a manslaughter conviction under § 97-3-47 does not mean, as the appellants confusingly argue, that the district court's denial of a § 97-3-47 jury instruction shows there was no evidence that Bell committed a willful act or intended to kill Hurst.  The district court instructed the jury on murder in addition to heat-of-passion manslaughter, a charge even appellants recognize requires willfulness and an intent to kill.

In short, a jury determined beyond a reasonable doubt that Bell willfully killed Hurst, without malice, in the heat of passion.  While appellants obviously seek to relitigate the question of whether the collision was an accident, a jury considered—and rejected—that portrayal of the October 30, 2004 collision.  As an element of the crime of heat-of-passion manslaughter, that issue was litigated, determined by, and essential to Bell's conviction.

The final element of collateral estoppel, mutuality of the parties, is also satisfied in this case.  Mississippi counsels against a "wooden and artificial reading" of the rule, *Jordan v. McKenna*, 573 So. 2d 1371, 1377 (Miss. 1990), and will bind a nonparty to the first judgment when the nonparty "stands in privity with the party in the prior action." *Hogan v. Buckingham ex rel. Buckingham*,

No. 09-60403

730 So. 2d 15, 18 (Miss. 1998). "'Privity' is . . . a broad concept, which requires us to look to the surrounding circumstances to determine whether claim preclusion is justified." *Little v. V & G Welding Supply, Inc.*, 704 So. 2d 1336, 1338 (Miss. 1997) (internal quotation marks and citation omitted). Quoting the RESTATEMENT OF JUDGMENTS (1942), the Mississippi Supreme Court has noted that:

> Privity is a word which expresses the idea that as to certain matters and in certain circumstances persons who are not parties to an action but who are connected with it in their interests are affected by the judgment with reference to interests involved in the action, as if they were parties. The statement that a person is bound . . . as a privy is a short method of stating that under the circumstances and for the purpose of the case at hand he is bound by . . . all or some of the rules of res judicata by way of merger, bar or collateral estoppel.

*Id.* at 1339 (quoting RESTATEMENT OF JUDGMENTS § 83 cmt. (1942).

Capital City filed this suit naming appellants and Bell as defendants, and seeks to prevent them from relitigating the question of whether Bell's conduct was an accident. *See Gollott v. State*, 646 So. 2d 1297, 1301 (Miss. 1994) ("[A] conviction of manslaughter will collaterally estop litigation of the same facts in the wrongful death suit."). Bell did not file an Answer and had a default entered against him. Latasha Hurst appeared as a *defense* witness in Bell's criminal trial, testifying that she had filed a civil suit against Bell so she could get insurance money to support her children, and stating she believed that Bell acted negligently. Referring to her belief that her husband's homicide was an accident, she testified: "I feel that no one in the right mind would do somebody like that." Just as the prosecution's witness and victim in *Jordan* was entitled to have the facts underlying the criminal defendant's conviction for rape conclusively established in her subsequent civil suit, common sense likewise suggests that there is enough identity between Latasha Hurst and Bell in the

9

No. 09-60403

criminal case that she is likewise bound in a subsequent civil suit by the criminal jury's judgment that Bell intentionally killed her husband.

Bell was aware of the civil suit during the criminal trial and had every incentive, given the charges against him, to use a defense of "accident" even though that would have been consistent with Capital City's liability under the Policy.[2]  There is no question that Bell was adequately represented at trial and no reason to question the jury's findings.  The criminal conviction is therefore entitled to whatever preclusive effect Mississippi would give it.

Turning to the terms of the Policy at issue in this case, the Policy provides coverage for bodily injury caused by an "accident" and expressly excludes coverage for bodily injury "expected or intended from the standpoint of the 'insured.'"  Under any reading of the Policy, Bell's manslaughter conviction negates any finding that Hurst's death was an "accident."  Appellants citation to *Southern Farm Bureau Casualty Insurance Co. v. Allard*, 611 So. 2d 966 (Miss. 1992), is unavailing, because that case involved an intentional act (the firing of a gun) that resulted in an unintentional injury.[3]  While not every manslaughter statute requires the killing be willful, heat-of-passion manslaughter does, and Bell's conviction conclusively establishes that he

---

[2] Even if Bell was found not guilty of manslaughter, any conceivable defense would have left the door open to a subsequent civil suit against him.  Bell is apparently judgment proof, however, as evidenced by his Chapter 7 bankruptcy filing.

[3] While Mississippi's case law on what constitutes an "accident" for insurance liability purposes may be slightly inconsistent, it is irrelevant where there is no doubt the killing was no "accident."  *Compare Allard*, 611 So. 2d 966 ("accident" where intentional shooting of gun led to unintentional foot injury), *with Allstate Ins. Co. v. Moulton*, 464 So. 2d 507, 509–10 (Miss. 1985) (no "accident" in insurance context where insured consciously devises and sets in motion a "chain of events leading to the injuries complained of," regardless of whether the injuries were unintended), *and U.S. Fidelity & Guar. Co. v. Omnibank*, 812 So. 2d 196, 200–01 (Miss. 2002) (adopting reasoning in *Moulton* and distinguishing *Allard* on the ground that in that case, a "fact issue existed as to whether the insured intended to harm the victim," and stating that "*Allard* and *Moulton* are consistent in that they both address the nature of the insured party's conduct, not the resulting damages of that conduct").

No. 09-60403

willfully and intentionally killed Lecedrick Hurst.  Under the plain reading of the Policy, the October 30, 2004 collision is excluded from coverage.

## IV.  CONCLUSION

For the foregoing reasons, we affirm the district court.

AFFIRMED.