# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 15-40007
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**

October 22, 2015

Lyle W. Cayce
Clerk

JAIME GUZMAN; DERRICK LAMBERT,

Plaintiffs–Appellees,

v.

MELVIN JONES; CELADON TRUCKING SERVICES, INCORPORATED,

Defendants–Appellants.

Appeal from the United States District Court
for the Southern District of Texas

Before HIGGINBOTHAM, ELROD, and SOUTHWICK, Circuit Judges.

JENNIFER WALKER ELROD, Circuit Judge:

Melvin Jones and Celadon Trucking Services appeal the district court's denial of their motion for new trial. They argue that the district court erred by admitting evidence of Jaime Guzman's medical expenses and refusing to provide an adverse jury instruction in their favor based on spoliation of evidence after Guzman underwent back surgery prior to a requested medical examination. Because the district court did not abuse its discretion in admitting evidence of the medical bills and in refusing spoliation sanctions, we AFFIRM.

No. 15-40007

**I.**

This law suit arises from a motor vehicle accident between a truck driven by Jones and owned by Celadon and another vehicle driven by Jaime Guzman. All parties agree that Jones was at fault for the accident and that Celadon is vicariously liable because the accident occurred in the scope of Jones' employment. A trial took place solely to determine the amount of damages. The jury returned an award of $1,314,000 to Guzman, of which $104,000 reflected past medical expenses. An additional $20,500 was awarded to co-plaintiff Derrick Lambert. Appellants do not contest that award.

During trial the district court allowed Guzman to present evidence of his medical bills. These bills showed the amounts charged to Guzman by his various medical providers. Although one bill indicates that Guzman may have been eligible for workers' compensation, no bill shows any reduction in charges provided as part of insurance coverage. The parties agree that, at the time of the accident, Guzman was not actually a Medicaid participant and received no benefits from the program toward his medical expenses, nor did he receive any workers' compensation payments. Prior to trial, Appellants moved to exclude the bills, arguing that Guzman was eligible for Medicaid and workers' compensation based on his employment status and his income levels. The district court denied Appellants' motion.

During discovery, on May 9, 2011, Appellants sent Guzman's counsel an e-mail indicating that they wanted Guzman to undergo an independent medical examination[1] to support Appellants' contention that his injuries were

---

[1] Although the phrase "independent medical examination" ("IME") might suggest an examination by a court-appointed physician, in Texas, an IME is simply an examination by a physician upon another party's motion; it does not entail the court's appointment of an independent physician. Under Rule 204.1 of the Texas Rules of Civil Procedure, a party may move to compel another party to submit to a medical examination, and the court may issue

No. 15-40007

not a result of the accident. Guzman's counsel provided Appellants' counsel with a draft order agreeing to the examination. The draft order was unsigned and had blank spaces in which Appellants' counsel could enter the examining physician and date of examination. On May 27, Guzman disclosed to Appellants during his deposition that he intended to undergo back surgery. On June 21, Appellants' counsel sent Guzman's counsel a signed proposed order for an independent medical examination. On June 23, Guzman scheduled his surgery, which then took place on June 27. On June 29, Guzman's counsel signed and returned the proposed order, which was never filed with the court. Guzman underwent the examination on July 26. Guzman's medical records, including scans taken prior to his surgery, were provided to Appellants' examiner. Following the examination, Appellants moved for sanctions against Guzman, alleging that his surgery constituted spoliation of evidence, and they requested a jury instruction of an adverse inference in their favor. The district court denied both motions.

## II.

We review district court rulings on the admissibility of evidence for abuse of discretion. *Arthur J. Gallagher & Co. v. Babcock*, 703 F.3d 284, 293 (5th Cir. 2012). When the question of admissibility first involves a legal determination, this court begins by reviewing the underlying legal analysis *de novo. Global Petrotech, Inc. v. Engelhard Corp.*, 58 F.3d 198, 201 (5th Cir. 1995).

In 2003, Texas enacted an omnibus tort reform bill and approved, through voter referendum, a state constitutional amendment to alter the

---

an order granting that motion if certain conditions are met. *See* Tex. R. Civ. P. 204.1. This is colloquially referred to as an "IME."

No. 15-40007

state's treatment of tort liability in a broad range of areas. Act of June 2, 2003, 78th Leg. R.S., ch. 204, 2003 Tex. Sess. Law Serv. Ch. 204 (H.B.4)(West); Tex. Const. art. III, § 66. As part of that reform, the legislature passed and the governor signed into law a provision that "[i]n addition to any other limitation under law, recovery of medical or health care expenses incurred is limited to the amount actually paid or incurred by or on behalf of the claimant." Tex. Civ. Prac. & Rem. Code § 41.0105 (West). The precise meaning of § 41.0105 has been the topic of considerable debate.[2]

The Supreme Court of Texas addressed § 41.0105 directly in *Haygood v. De Escabedo*, 356 S.W.3d 390 (Tex. 2012). Aaron Haygood was injured in a car accident caused by Margarita de Escabedo. *Haygood*, 356 S.W.3d at 392. During his trial, Haygood introduced several medical bills totaling $110,069.12. *Id.* These bills, however, were an inaccurate reflection of his actual personal liabilities because he was a participant in Medicare Part B. *Id.* As the Supreme Court of Texas explained:

> Charges for health care, once based on the provider's costs and profit margin, have more recently been driven by government regulation and negotiations with private insurers. A two-tiered structure has evolved: "list" or "full" rates sometimes charged to uninsured patients, but frequently uncollected, and reimbursement rates for patients covered by government and private insurance. . . . [F]ew patients today ever pay a hospital's full charges, due to the prevalence of Medicare, Medicaid, HMOs, and private insurers who pay discounted rates. Hospitals, like health care providers in general, feel financial pressure to set their full charges as high as possible, because the higher the full charge the greater the reimbursement amount the hospital receives since

---

[2] *See*, *e.g.*, Jim M. Perdue, Jr., *Maybe It Depends on What Your Definition of "Or" Is?— A Holistic Approach to Texas Civil Practice and Remedies Code § 41.0105, the Collateral Source Rule, and Legislative History*, 38 Tex. Tech. L. Rev. 241 (2006); Michael S. Hull et al., *House Bill 4 and Proposition 12: An Analysis with Legislative History, Part Three,* 36 Tex. Tech. L. Rev. 169, 318 (2005).

> reimbursement rates are often set as a percentage of the hospital's full charge. . . . Providers commonly bill insured patients at list rates, with reductions to reimbursement rates shown separately as adjustments or credits. Portions of bills showing only list charges are admitted in evidence, with proof of reasonableness coming from testimony by the provider, or more often, by affidavit of the provider . . . .

*Id.* at 393–94 (footnotes, alteration, and internal quotation marks omitted). In *Haygood*, the plaintiff entered into evidence bills showing the list prices of the treatments he had received even though the amounts actually paid by Medicare and Haygood were only one-fourth of that amount. *Id.* at 392, 394. Because of the reimbursement rates mandated by law through Medicare, the various providers treating Haygood were only entitled to a maximum of $27,739.43. *Id.* at 392. In response, Haygood argued that the reduction in his bill fell under the collateral source rule, the common law principle that precludes any reduction in a tortfeasor's liability because of benefits received by the plaintiff from a third party. *Id.* at 392, 394–96. The Supreme Court of Texas, however, concluded that the text of § 41.0105 "limits a claimant's recovery of medical expenses to those which have been or must be paid by or for the claimant." *Id.* at 398. Because neither Haygood nor Medicare was under any obligation to pay the amounts entered into evidence, the court reversed the award and capped his damages at the total amount owed by Haygood and Medicare. *Id.* at 399–400.

The present case raises a different question than that answered in *Haygood*: whether an uninsured plaintiff who may have been eligible for insurance benefits but did not have insurance at the time of his injury or treatment is barred from presenting evidence of the list prices he was charged by the hospital and is obligated to pay.

No. 15-40007

Appellants argue here that Guzman's debt to his medical providers is not "actually incurred" because Guzman may have been charged a different rate had he participated in an insurance program. That argument is unconvincing; here, Guzman has actually incurred his billed obligations because he received the medical care, was billed for it, has provided no payments to cover it, and could be subject to suit for non-payment in the full amount billed. The amount he might have owed under different circumstances has no bearing on what Guzman *actually* owes now. Appellants' reliance on *Haygood* is misplaced. The decision in *Haygood* prohibits a plaintiff from introducing evidence of, or recovering damages in excess of, the reduced rate negotiated between his insurer and his medical provider because that is the most the medical provider can take from the plaintiff. *Haygood*, 356 S.W.3d at 395, 399 ("[W]e hold that only evidence of recoverable medical expenses is admissible at trial."). *Haygood* gives no indication, however, that such a limitation is required by § 41.0105 when the plaintiff does not benefit from a reduced rate but merely may be eligible for insurance or public benefits that would have reduced his rates.

The Supreme Court of Texas has not yet considered the precise issue raised in this case. In such a situation, which calls for an "*Erie* guess," *see Kreiser v. Hobbs*, 166 F.3d 736, 739 (5th Cir. 1999), *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938), the Fifth Circuit "may look to the decisions of intermediate appellate state courts for guidance." *Howe v. Scottsdale Ins. Co.*, 204 F.3d 624, 627 (5th Cir. 2000). The decision of such a court provides "a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise." *Labiche v. Legal Sec. Life Ins. Co.*, 31 F.3d 350, 352 (5th Cir. 1994) (quoting *Comm'r v. Estate of Bosch*, 387 U.S. 456, 465 (1967)).

No. 15-40007

Here, we find persuasive the rulings of Texas' intermediate courts declining to extend the limitations imposed in *Haygood*.

In *Big Bird Tree Service v. Gallegos*, the Dallas Court of Appeals permitted an uninsured plaintiff to recover his billed medical expenses even though the hospital waived his charges through its own charitable program because the hospital was under no contractual obligation to provide for the plaintiff's care and reserved the right to collect from the plaintiff if he prevailed in his suit. 365 S.W.3d 173, 177 (Tex. App.—Dallas 2012, pet. denied). In another case, the Fourteenth Court of Appeals in Houston allowed recovery for the billed medical expenses of an uninsured plaintiff. *Metro. Transit Auth. v. McChristian*, 449 S.W.3d 846, 854 (Tex. App.—Houston [14th Dist.] 2014, no pet.). Writing for that court, Justice Boyce carefully explained:

> [S]ection 41.0105 addresses the difficulty in determining reasonable expenses for necessary medical care when "[h]ealth care providers set charges they maintain are reasonable while agreeing to reimbursement at much lower rates determined by insurers to be reasonable, resulting in great disparities between amounts billed and payments accepted." The difficulty highlighted in *Haygood* does not arise in this case given the uninsured status reflected in McChristian's medical records; bills showing no adjustments . . .; and McChristian's testimony that the bills are his responsibility and remain unpaid. This record offers no basis for a conclusion that the medical expenses at issue here included list price charges for which the service providers billed but had "no right to be paid."

*Id.* (quoting *Haygood*, 356 S.W.2d at 391, 396) (citations omitted). There are no meaningful distinctions between Guzman's situation and McChristian's. Guzman was actually billed the amounts awarded by the jury for his medical expenses, and he remains under a legal obligation to pay the billed amounts to his medical providers. Reduced prices that he may have received had he

participated in health benefits or insurance programs for which he may have been eligible are irrelevant according to Texas law. As Texas law permits consideration of Guzman's medical bills, the district did not err—and most certainly did not abuse its discretion—in allowing evidence of Guzman's medical bills into the trial.

## III.

A trial court's decision on a motion for sanctions for spoliation of evidence during discovery is reviewed for abuse of discretion. *Sierra Club, Lone Star Chapter v. Cedar Point Oil Co.*, 73 F.3d 546, 569 (5th Cir. 1996). Spoliation of evidence "is the destruction or the significant and meaningful alteration of evidence." *Rimkus Consulting Grp., Inc. v. Cammarata*, 688 F. Supp. 2d 598, 612 (S.D. Tex. 2010). We permit an adverse inference against the spoliator or sanctions against the spoliator only upon a showing of "bad faith" or "bad conduct." *Condrey v. SunTrust Bank of Georgia*, 431 F.3d 191, 203 (5th Cir. 2005) (internal quotation marks omitted). A party's duty to preserve evidence comes into being when the party has notice that the evidence is relevant to the litigation or should have known that the evidence may be relevant. *Rimkus*, 688 F. Supp. 2d at 612. Bad faith, in the context of spoliation, generally means destruction for the purpose of hiding adverse evidence. *See Mathis v. John Morden Buick, Inc.*, 136 F.3d 1153, 1155 (7th Cir. 1998).

The district court acknowledged that Guzman may have been under a duty to preserve. At the time he scheduled the surgery, his counsel knew of Appellants' desire to conduct an independent medical examination. The district court concluded, however, that even if Guzman had been under a duty to preserve evidence, his conduct did not merit sanctions or adverse instructions because Appellants produced no evidence suggesting bad faith. Guzman's disclosure of his intent to have surgery during his deposition

No. 15-40007

suggests he was not seeking to deceive Appellants. After Appellants received this disclosure in the deposition, they made no request to be informed of his surgery date, nor did they ask that he delay surgery pending his examination. Only after the examination was completed did Appellants assert that the surgery had meaningfully altered evidence.

While the timing of Guzman's surgery may seem strange, there is no evidence to suggest that he acted in a manner intended to deceive Appellants or that he undertook the surgery with the intent of destroying or altering evidence. The district court concluded that the timing of Guzman's surgery alone was insufficient to demonstrate he had acted in bad faith. We find no reason to conclude that the district court abused its discretion in denying the motion for adverse instructions based on spoliation of evidence.

## IV.

The district court's judgment is AFFIRMED as remitted.[3]

---

[3] The jury awarded $1,314,000 in damages, of which $104,000 compensated for past medical damages. The award for medical damages, apparently due to a slight typographical error, exceeded the evidence that Guzman introduced into trial. Guzman agrees that a remittitur is appropriate under these circumstances. *See Brunnemann v. Terra Int'l, Inc.*, 975 F.2d 175, 177 (5th Cir. 1992); *McDonald v. Bennett*, 674 F.2d 1080, 1092 (5th Cir. 1982). Accordingly, the judgment is hereby remitted to $1,313,047.20.