# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

March 8, 2022

Lyle W. Cayce
Clerk

No. 21-20352

Carlon Ann Eagan,

*Plaintiff—Appellant*,

*versus*

Walgreen Company,

*Defendant—Appellee*.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:19-CV-04687

Before Wiener, Graves, and Duncan.

Per Curiam:*

This case arises from a slip-and-fall accident in a convenience store. The district court granted summary judgment in favor of Defendant-Appellee Walgreen Company ("Walgreens") and denied Plaintiff-Appellant Carlon Ann Eagan's motion for spoliation sanctions. We AFFIRM.

---

* Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

No. 21-20352

I.

Background

Eagan visited Walgreens just before closing time to buy Cold-EEZE. She slipped and "crashed down" on her way to checkout, dislocating her hip and breaking her femur. She underwent surgery and spent the next two weeks in a rehabilitation hospital where she re-learned how to walk, sit, and go to the bathroom.

Eagan sued Walgreens which moved for summary judgment. Eagan moved for imposition of sanctions, contending that Walgreens "willfully and intentionally" destroyed evidence. The district court granted summary judgment in favor of Walgreens, holding that Eagan failed to prove causation:

> Eagan offer[ed] no admissible or supported evidence of what she slipped on — or that she slipped on anything at all. She can argue all she wants that there was a liquid on the floor somewhere in the store. As the one who sued, it is her burden to prove that the area of the store where she slipped had a known liquid on the floor — not Walgreens's burden to prove that the liquid was not there.

The district court also denied Eagan's motion to impose sanctions, concluding that the motion was "largely emotional puffery, conjecture, and unsupported theories."

II.

Summary Judgment

No. 21-20352

We review the district court's grant of summary judgment de novo.[1] Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[2] A genuine dispute "exists when evidence is sufficient for a reasonable jury to return a verdict for the non-moving party, and a fact is material if it 'might affect the outcome of the suit.'"[3]

Under Texas law, "[a] landowner has a duty to exercise reasonable care to make the premises safe for invitees."[4] An invitee must establish four elements to succeed on a premises-liability claim:

> (1) the property owner had actual or constructive knowledge of the condition causing the injury; (2) the condition posed an unreasonable risk of harm; (3) the property owner failed to take reasonable care to reduce or eliminate the risk; and (4) the property owner's failure to use reasonable care to reduce or eliminate the risk was the proximate cause of injuries to the invitee.[5]

The district court rested its analysis on the fourth element, holding that Eagan failed to prove causation.

Eagan contends that, in her opposition to the motion for summary judgment and in her appellate brief, she "argued and presented evidence that [she] slipped on *something* on the floor, whether it was degreaser or mop

---

[1] *Antoine v. First Student, Inc.*, 713 F.3d 824, 830 (5th Cir. 2013).

[2] FED. R. CIV. P. 56(a).

[3] *Willis v. Cleco Corp.*, 749 F.3d 314, 317 (5th Cir. 2014) (citation omitted; quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

[4] *Austin v. Kroger Tex., L.P.*, 465 S.W.3d 193, 202 (Tex. 2015).

[5] *Henkel v. Norman*, 441 S.W.3d 249, 251-52 (Tex. 2014).

water, that was on the floor because Walgreens failed to properly clean the floor." "A claim which is not raised in the complaint but, rather, is raised only in response to a motion for summary judgment is not properly before the court."[6] In her complaint, Eagan alleged that: "Unfortunately for Ms. Eagan, a Walgreens' employee, in an attempt to quickly close the store that night, walked around the store just prior to Ms. Eagan's arrival and sprayed degreaser on scuff marks and spots on the floor rather than properly cleaning the floors (and taking proper measures to ensure Walgreens' patrons [sic] safety in the process thereof)." As Walgreens points out, there is no mention anywhere in the complaint of an employee mopping. However, reading her pleading generously, she did raise the premises-liability claim based on Walgreens not taking proper measures to ensure its patrons' safety. We will therefore consider whether degreaser or mop water might have been the cause of the accident.

## A.

## Degreaser

There is no evidence that an employee sprayed degreaser on the floor. When Eagan walked in, she saw an employee holding a spray bottle and a rag, but Eagan does not know what the employee was doing with them. She does not know what was in the spray bottle. She also admitted that she never witnessed any employee spray anything on the floor. Even taking the evidence in the light most favorable to Eagan, there is no credible evidence that degreaser was sprayed on the floor or that degreaser was the cause of her accident.

---

[6] *Cutrera v. Bd. of Supervisors of La. State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005).

No. 21-20352

B.

Mop Water

Eagan did not see any liquid on the floor either before or after she fell. Neither did she see any employee mopping that night or any warning sign. She does not remember the fall itself but remembers being in "excruciating pain and groaning."

The closest Eagan gets to describing a substance on the floor is by stating that as she fell she "felt something slippery." There is at least some evidence that there might have been wet spots in the store. One employee, Leah Benavides, testified that she was "spot mopping" around the time of the incident, working on "small areas, not a large area." Benavides described the mop as "moist." She explained "it wasn't saturated. It was just moistened, but I wrung it out thoroughly to where I could at least go and mop up the spots. They were small spots." She mopped by the island register and near the refreshment cooler. However, she could not say with certainty what route she took to reach those two spots. Benavides did, however, remember that when she saw Eagan lying on the floor it was not in a spot where she had mopped. In the statement she prepared thirteen days after the accident, Benavides stated that, as she proceeded to the refreshment coolers, she "became aware [they] had a customer in the store, it was mentioned to be careful of the area because it was just mopped." At her deposition, Benavides did not remember whether she gave that warning. It is curious that Eagan relies on this as evidence that there was a wet spot on the floor. If true, Eagan was warned and cannot recover. "[I]n most cases, the landowner can also satisfy its duty by providing an adequate warning of the danger."[7] "[A] warning by a cashier to a customer to 'watch the wet spot' was an adequate

---

[7] *Austin*, 465 S.W.3d at 202.

warning as a matter of law. And a wet floor warning sign and verbal warning to 'be careful' because the 'floor may be a little damp' was adequate as a matter of law to discharge a property owner's duty to an invitee."[8] At the summary-judgment stage, taking the evidence in the light most favorable to the nonmovant, we must assume that the warning was not given otherwise Eagan could not recover.

Theoretically then, the "barely wet" mop might have dripped fluid somewhere along the route from the supply closet and the two wet spots. Still, neither Eagan nor Benavides place the fall at one of the two wet spots.

The final piece of purported evidence arises from a literal and figurative game of telephone. Carlon Ann's son, Robert Eagan, visited the Walgreens the day after the accident. Robert spoke with the assistant manager, Nadine Kaedby and said that Kaedby "stated that they went back and reviewed the video footage and that my mom had slipped on some degreaser that the – an employee was using to spot mop the area before closing."[9] Robert did not personally watch the surveillance footage. He later called the manager Andrew Lemons, and testified that Lemons "gave me some more information, that he reviewed the video and that he said that the employee was a second-day transfer from another store that was trying to get out of the store early, admittedly, and that they were not following protocol."[10]

---

[8] *Henkel*, 441 S.W.3d at 252 (citation omitted).

[9] Kaedby gives a different account of the conversation: "I just let him know that all I knew is that his mom had slipped and fell and that there was no video of it, because he asked if there was a video of it."

[10] In contrast, Lemons states: "There's no video of her falling at all."

No. 21-20352

At most, we have (1) a damp mop present somewhere in the store, (2) the injured party's testimony that she felt "something slippery" without any explanation as to what might have been slippery, and (3) her son's secondhand account of conversations he had with store management who were not present at the time of the accident. "Mere suspicion is insufficient to carry the . . . burden of establishing a genuine issue for trial."[11]

At the summary judgment stage, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."[12] However, "a party's uncorroborated self-serving testimony cannot prevent summary judgment, particularly if the overwhelming documentary evidence supports the opposite scenario."[13] Here, Eagan can only provide "conclusional allegations, unsupported assertions, [and the] presentation of only a scintilla of evidence."[14] Summary judgment is appropriate.

## III.

## Spoliation

Spoliation is "the destruction or the significant and meaningful alteration of evidence."[15] Sanctions are only appropriate on a showing of bad faith.[16] Bad faith "generally means destruction for the purpose of hiding

---

[11] *McCarty v. Hillstone Rest. Grp., Inc.*, 864 F.3d 354, 359 (5th Cir. 2017).

[12] *Anderson*, 477 U.S. at 255.

[13] *Vinewood Cap., LLC v. Dar Al-Maal Al-Islami Tr.*, 541 F. App'x 443, 447 (5th Cir. 2013) (unpublished).

[14] *McFaul v. Valenzuela*, 684 F.3d 564, 571 (5th Cir. 2012).

[15] *Guzman v. Jones*, 804 F.3d 707, 713 (5th Cir. 2015) (quoting *Rimkus Consulting Grp., Inc. v. Cammarata*, 688 F. Supp. 2d 598, 612 (S.D. Tex. 2010)).

[16] *Id.*

adverse evidence."[17] For electronically stored information, an adverse inference may be given to the jury "only upon [a] finding that the party acted with the intent to deprive another party of the information's use in the litigation."[18] If the trial court concluded there was "prejudice to another party from loss of the information, [the court] may order measures no greater than necessary to cure the prejudice."[19] The decision to issue sanctions for spoliation during discovery is reviewed for abuse of discretion.[20]

The surveillance footage on the night of the accident was not preserved. Walgreens notified its third-party claims administrator about the incident. Lemons was directed to send to the claims administrator surveillance video of the event including the scene of the incident for a period spanning from one hour before to one hour after the incident. Lemons downloaded the footage to a DVD and sent it to the claims administrator. In the period of two years between the accident and the filing of the lawsuit, the discs were lost. Lemons eventually found three discs in a file, but all three were blank. Eagan, understandably, takes issue with the lost-and-found journey of the blank DVD's. However, both Kaedby and Lemons confirmed that no camera caught Eagan's fall. She therefore could not have suffered prejudice as a result of the inadvertent destruction of the video. Eagan contends that the surveillance video would have captured her fall, but the district court did not abuse its discretion in refusing to issue sanctions.

AFFIRMED.

---

[17] *Id.*

[18] Fed. R. Civ. P. 37(e)(2).

[19] *Id.* (e)(1).

[20] *Guzman*, 804 F.3d at 713.