# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
April 4, 2024

Lyle W. Cayce
Clerk

_____

No. 23-30393

_____

Susan Miller,

*Plaintiff—Appellant*,

*versus*

Michaels Stores, Incorporated, *doing business as* Michaels,

*Defendant—Appellee*.

_____

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:22-CV-359

_____

Before Richman, *Chief Judge*, and Graves and Wilson, *Circuit Judges*.

James E. Graves, Jr., *Circuit Judge*:

Plaintiff-appellant Susan Miller brought this negligence suit against defendant-appellee Michaels Stores, Inc., seeking compensation for injuries she allegedly suffered after slipping and falling at a store in Slidell, Louisiana. Under Louisiana law, Miller must show that the hazardous conditions that caused her injury existed for such a time that Michaels was on constructive notice of them. While there are lingering questions about Michaels's failure to disclose potentially relevant evidence in the proceedings below, we conclude that Miller failed to demonstrate either spoliation or a genuine

dispute of material fact as to notice. We therefore AFFIRM the district court's grant of summary judgment to Michaels.

## I. BACKGROUND

Miller arrived at the Michaels store in Slidell in the midst of a rainstorm. Upon walking into the store's vestibule, she turned left and entered the store proper via a propped-open exit door, rather than the entrance doors in front of her.

Seconds afterward, Miller slipped and fell on a clear substance. In a later affidavit, Miller declared that there were no signs in the area where she entered to warn her that the floor was wet. She also declared that a staff member witnessed her fall and told her that staff had set up a warning sign and a mat at the other door, but not at the door Miller used. The staff member also told her that staff had been mopping up water tracked in by customers.

Before Miller left, she took photos of cameras mounted on the ceiling and asked staff to file an incident report "to connect with the surveillance footage."

Miller sued Michaels for negligence, alleging that she suffered disabling injuries as a result of her fall. Michaels moved for summary judgment, arguing that Miller lacked evidence that Michaels was on notice of any hazards in the area where Miller slipped. Miller responded that Michaels had deprived her of that evidence by failing, in discovery, to turn over video footage of the front of the store from the day she fell. Specifically, Miller argued, Michaels had claimed in a discovery response that it had no footage, and that there were no cameras located where Miller's fall occurred—claims that, she argued, were undermined by her photos of the ceiling-mounted cameras. Prompted by Miller, the district court ordered Michaels to produce "any surveillance footage of the alleged incident." The district court also ordered Michaels to produce a verified statement "addressing the

inconsistencies in its [discovery] answers," to assist it in deciding the summary judgment motion.

Two weeks later, Michaels complied with the order, submitting two videos to the court. Michaels's counsel explained in an accompanying affidavit that Michaels had not produced the footage earlier because it "does not . . . show[] the floor where plaintiff allegedly fell." An additional affidavit from the store's manager averred that "[t]he two videos being submitted are the only videos showing the entrance and exit to the store and the checkout counter."

The district court described the relevant portion of the footage:

> [A]t around 53 seconds in, plaintiff can be seen entering the second set of doors to defendant's shop, at 55 seconds, plaintiff exits the frame entirely, then at 57 seconds plaintiff is seen reentering the frame near the ground. This video continues for 21 additional minutes.

In a brief in response to Michaels's evidentiary submission, Miller reiterated her claim that Michaels gave false answers in discovery and argued, among other things, that the district court's resolution of the summary judgment motion should be delayed to allow her to move to compel the production of more footage. A little over two weeks later, she deposed the store manager, who produced an email from a Michaels claims manager instructing store staff to preserve video "30 minutes prior and after" Miller's fall.

But instead of moving to compel production of more footage, Miller moved for an adverse inference based on spoliation. Principally, she argued that Michaels's failure to turn over video from thirty minutes before Miller's fall indicated a failure to preserve relevant evidence.

No. 23-30393

On May 24, 2023, the district court denied the spoliation motion on the ground that Michaels's failure to produce it did not prejudice Miller. It explained that Michaels's footage "does not capture the location of [Miller's] alleged fall" and therefore could not show that staff were on notice of a hazardous condition there.

Then, on June 9, 2023, the district court granted Michaels's summary judgment motion. In a comprehensive order, it concluded that the evidence—Miller's declaration and photos, the deposition and affidavit testimony, and the videos submitted by Michaels—did not create a genuine dispute of material fact as to notice. It did not consider the statement recounted by Miller in her affidavit from the unidentified staff member, concluding it was hearsay.

This appeal followed.

## II. STANDARD OF REVIEW

The standard of review on summary judgment is de novo. *Davidson v. Fairchild Controls Corp.*, 882 F.3d 180, 184 (5th Cir. 2018). When the party that did not move for summary judgment bears the burden of proof at trial—as Miller does on her negligence claim—the moving party need only point to a lack of evidence on an essential part of the non-moving party's claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden shifts to the non-moving party to show, with competent evidence, the existence of a genuine dispute of material fact. *Id.* at 322-23. The court must construe all facts and draw all reasonable inferences in the light most favorable to the non-moving party. *Cap. City Ins. Co. v. Hurst*, 632 F.3d 898, 903 (5th Cir. 2011).

## III. DISCUSSION

Miller argues that the district court wrongly concluded that her evidence was not sufficient to meet her summary judgment burden as to notice. She argues that the district court also erred in ruling inadmissible the

4

comments that she recounted in her affidavit from the unidentified staff member. Separately, she argues that the district court erred in denying her spoliation motion.

### a. The "temporal element"

We begin with an overview of the relevant law. In Louisiana, a standard negligence claim consists of five elements: (1) a duty of care; (2) a breach of that duty; (3) cause in fact (4) legal cause; and (5) damages. *Lemann v. Essen Lane Daiquiris, Inc.*, 05-1095, p. 7 (La. 3/10/06), 923 So. 2d 627, 633. A plaintiff bringing a slip and fall claim, however, has the additional burden, under the state's merchant liability statute, of proving an extra element: that "[t]he merchant either created or had actual or constructive notice of the condition which caused the damage, prior to the occurrence." LA. REV. STAT. ANN. § 9:2800.6(B)(2); *see also Duncan v. Wal-Mart La., L.L.C.*, 863 F.3d 406, 409 (5th Cir. 2017).

To prove constructive notice, the plaintiff must show "that the condition existed for such a period of time that it would have been discovered if the merchant had exercised reasonable care." LA. REV. STAT. ANN. § 9:2800.6(C)(1). The parties' arguments here are focused on this period-of-time requirement—or, as Louisiana courts have called it, "the temporal element." *Fountain v. Wal-Mart Stores, Inc.*, 19-669, p. 7 (La. App. 3 Cir. 3/18/20), 297 So. 3d 100, 106.

The Louisiana Supreme Court has explained that to prove the temporal element, a plaintiff "must make a positive showing of the existence of the condition prior to the fall" as well as the "additional showing that the condition existed *for some time* before the fall." *White v. Wal-Mart Stores, Inc.*, 97-0393, p. 4 (La. 9/9/97); 699 So. 2d 1081, 1084 (emphasis added). Accordingly, to survive summary judgment, a plaintiff must satisfy the "prerequisite" of putting forth "some positive evidence . . . of how long the

condition existed prior to the fall." *Bagley v. Albertsons, Inc.*, 492 F.3d 328, 331 (5th Cir. 2007) (quoting *Robinson v. Brookshires # 26*, 33,713, p. 5–6 (La. App. 2 Cir. 8/25/00), 769 So. 2d 639, 642). Louisiana courts—as well as the district court here—have noted the heavy burden that the standard creates, "ma[king] it almost impossible for a [p]laintiff to prove the temporal element to show constructive notice." *Kimble v. Winn-Dixie La., Inc.*, 01-514, p. 10 (La. App. 5 Cir. 10/17/01), 800 So. 2d 987, 992; *see also Fountain*, 297 So. 3d at 104.

Courts have expounded on the kinds of showings that do *not* satisfy the temporal element. For instance, showing only that it had been raining and that the area where the plaintiff slipped was in clear view of store staff was not sufficient. *Kennedy v. Wal-Mart Stores, Inc.*, 98-1939, p. 4 (La. 4/13/99), 733 So. 2d 1188, 1191 (explaining that plaintiff "presented absolutely no evidence as to the length of time the puddle was on the floor before his accident"). Nor was video that captured numerous shoppers walking into the store from the rain forty minutes to an hour before the incident occurred. *Fountain*, 297 So. 3d at 107–08. As the court summarized,

> any evidence that it was raining, that an area in which a fall occurred was visible to store personnel, and/or that [the defendant] should have foreseen the hazard created by rain puddles at or near the entrance of this high volume store because it knew it was raining, is insufficient to support a finding that it had constructive notice.

*Id.* at 109.

On the other hand, evidence clearly indicating that a hazardous condition existed for some time satisfies the temporal element. In *Bagley v. Albertsons*, a plaintiff who slipped and fell in a grocery store aisle created a genuine dispute of material fact through the combination of testimony of a firefighter who observed, after the plaintiff's fall, that a wet substance

covered an area extending between two aisles—suggesting that the substance had leaked from a customer's cart—and the plaintiff's own testimony that no one was in the aisle when she got there. 492 F.3d at 331. That evidence clearly "impl[ied] th[e] passage of 'some period of time.'" *Id.* And in *Benitate v. Wal-Mart*, the Louisiana court of appeal concluded that a plaintiff who slipped on a smashed french fry satisfied the temporal element. 97-802, p. 13 (La. App. 5 Cir. 12/10/97); 704 So. 2d 851, 856. She testified that the area around the french fry was "black, as though carts had been pushed around there"; additionally, an investigator testified that he had seen spilled beverages in the same area on multiple occasions and that employees made no effort to clean them up. *Id.*

### b. Summary judgment

Against that framework, the district court correctly determined that the evidence fails to show either that Michaels staff had actual notice of the condition of the area where Miller fell or that the floor had been wet for some time. Miller averred only that it had been raining and that a wet floor sign and mat had been placed at the right-side door—facts that show nothing about how long it was wet in the spot where she slipped. Moreover, the only video that captures Miller near the time of her fall begins just fifty-seven seconds before, so it is incapable of showing that the floor had been wet "for some time."

Miller also presented deposition testimony in which the store manager testified that the protocol during rainy weather was to put out a wet floor sign. Miller argued that the existence of a store policy to mitigate danger from rainwater proved notice. But as we have concluded before, the fact that staff failed to place signs at a store entrance during a storm, even in contravention of a store policy, does not establish the *existence* of a particular hazard, let alone how long it existed. *Pollet v. Sears Roebuck & Co.*, 46 F. App'x 226, 2002

WL 1939917, at *7–8 (5th Cir. 2002) (citing *Kennedy*, 733 So. 2d at 1189 n.1, 1190–91).[1] If staff did ignore an internal policy, that fact may be relevant to whether Michaels exercised reasonable care, but it is not relevant to notice. *See Fountain*, 297 So. 3d at 108.

In sum, none of the evidence before the district court showed that Michaels was on notice of a hazard where Miller slipped. The district court's conclusion that Miller failed to establish the existence of a genuine dispute of fact as to notice was not error.

### c. Hearsay

Next, Miller argues that the district court wrongly concluded that the statement made by the Michaels staff member recounted in her affidavit was hearsay and thus inadmissible at summary judgment. "We review a district court's decision to exclude evidence in connection with a summary judgment motion under the abuse of discretion standard." *Warren v. Fed. Nat'l Mortg. Ass'n*, 932 F.3d 378, 383 (5th Cir. 2019). Hearsay is not competent summary judgment evidence, *Martin v. John W. Stone Oil Distrib., Inc.*, 819 F.2d 547, 549 (5th Cir. 1987), unless its proponent can show that the statement can be presented in an admissible form at trial, *Patel v. Texas Tech Univ.*, 941 F.3d 743, 746 (5th Cir. 2019).

Miller testified that after she fell, the staff member approached and

12.    . . . told me that they had placed a mat on the tile floor of the right entrance because rainwater and sleet [were] being tracked into the store—the employee told me that they did not put any mats or "wet floor" [signs] on the left side entrance;

---

[1] "An unpublished opinion issued after January 1, 1996 is not controlling precedent, but may be persuasive authority." *Butler v. S. Porter*, 999 F.3d 287, 296 (5th Cir. 2021).

> 13. The [Michaels] employee, who was wearing a red vest and name tag[,] told me that the reason that they had a mat on the floor and a "wet floor" sign on the right side entrance was because they had been dry mopping the floor from the water being tracked in and out of the store by customers[.]

First, Miller argues that the statement is admissible under the hearsay exception for excited utterances—that is, as "[a] statement relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused." Fed. R. Evid. 803(2). But even if we were to infer that the staff member was startled by Miller's fall, their statement related to events that occurred before the incident—mopping and setting up signs—not the incident itself. *See United States v. Alarcon-Simi*, 300 F.3d 1172, 1176 (9th Cir. 2002). Nor, alternatively, does Miller's affidavit permit us to infer that the employee was in a state of excitement about mopping and setting up signs. *See United States v. Cain*, 587 F.2d 678, 681 (5th Cir. 1979) (explaining that Rule 803(2) is inapplicable where declarant "had no reason to be in a state of excitement").

Miller also argues that the statement is admissible as a statement against interest under Federal Rule of Evidence 804(b)(3). But that exception requires her to demonstrate, among other things, that her witness would be unavailable for trial. *See United States v. Fernandez-Roque*, 703 F.2d 808, 812 (5th Cir. 1983). Miller does not even try to make that showing.

Moreover, even if the statement *were* admissible based on a hearsay exception—or could be made admissible at trial—it would still be inadmissible for the more basic reason that it lacks relevance to the issue of notice. *See* Fed. R. Evid. 401. The statement does not pertain to the condition of the floor where Miller slipped. Unlike, for example, the testimony of the firefighter in *Bagley*, it has no tendency to show how long a hazardous

condition existed. *See* 492 F.3d at 331. The district court's exclusion of the staff member's statement was not an abuse of discretion.

### d. Spoliation

Last, Miller argues that Michaels failed to preserve video footage from the thirty minutes that preceded her fall, and that, accordingly, she was entitled to the inference that the footage would have established the temporal element. We review the denial of a motion for sanctions based on spoliation for abuse of discretion. *Guzman v. Jones*, 804 F.3d 707, 713 (5th Cir. 2015).

"Spoliation of evidence is the destruction or the significant and meaningful alteration of evidence." *Van Winkle v. Rogers*, 82 F.4th 370, 374 (5th Cir. 2023) (quoting *Guzman*, 804 F.3d at 713). If spoliation is found, and was done in bad faith, the district court may permit the factfinder to draw the inference that the spoliator destroyed or altered the evidence because it was unfavorable. *Id.* "Bad faith, in the context of spoliation, generally means destruction for the purpose of hiding adverse evidence." *Id.*; *see also* Fed. R. Civ. P. 37(e)(2)(B) (if party "acted with the intent to deprive another party of [electronically-stored] information's use in the litigation," district court may permit an adverse inference).

Miller is not entitled to an adverse inference based on spoliation for the simple reason that she has failed to show that any spoliation occurred. *See Guzman*, 804 F.3d at 713. She assumes, without any apparent justification, that because Michaels never produced the thirty minutes of footage preceding her fall, it must have "accidentally erased or lost" it. But there is no evidence to support that conclusion. Indeed, her briefing makes clear that her qualm is not any *destruction* of the footage (*i.e.*, spoliation), but Michaels's failure to *produce* the footage in response to her discovery requests.

On that point, we disagree with the district court's conclusion that no additional footage could be relevant to Miller's claim because the footage of

the store's entrance did not clearly show her fall. We can imagine circumstances where the thirty minutes of footage preceding Miller's fall would be relevant to the temporal element. The area captured in the footage that Michaels did produce is very close to the spot where Miller slipped—she fell two seconds after walking out of the frame. Because it is so close, we need not speculate too much to conceive of ways that footage from the preceding thirty minutes could help Miller.  It could show another shopper falling in the same area or walking through the doors while shaking a wet umbrella. Such facts would permit the trier of fact to infer that the area where Miller slipped was also wet. *See Bagley*, 492 F.3d at 331. Indeed, in another case where footage showed the area *near* a slip and fall, we examined it closely for indications of how long the hazard existed. *McDowell v. Wal-Mart Stores, Inc.*, 811 F. App'x 881, 882, 884 (5th Cir. 2020).

Yet, because Miller moved in the district court for an adverse inference based on spoliation, rather than to compel production of the remainder of the footage, her right to receive that footage was never properly before the district court. *See GFI Comput. Indus., Inc. v. Fry*, 476 F.2d 1, 3 (5th Cir. 1973) ("Plaintiff's remedy . . . for failure to produce pursuant to a Rule 34 request, was to file a motion under Rule 37(a) for an order requiring defendant to . . . produce documents for inspection."). There is no evidence that spoliation occurred. The district court did not abuse its discretion in denying Miller's motion.

## IV. CONCLUSION

We AFFIRM the district court's grant of summary judgment to Michaels.