# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

September 18, 2015

Lyle W. Cayce
Clerk

No. 14-51169

LOUIS V. DOSS, doing business as Mulligan's Pub; CAROLYN DOSS, Individually and, doing business as Mulligan's Pub,

Plaintiffs - Appellees

v.

TABC AGENT SCOTT HELPENSTELL,

Defendant - Appellant

Appeals from the United States District Court
for the Western District of Texas
USDC No. 5:11-CV-116

Before WIENER, CLEMENT, and SOUTHWICK, Circuit Judges.

PER CURIAM:[*]

Defendant-Appellant Scott Helpenstell, an agent of the Texas Alcoholic Beverage Commission ("TABC"), appeals the district court's denial of his motion for summary judgment on the basis of qualified immunity, filed after Plaintiff-Appellee Louis Doss[1] sued Helpenstell claiming extensive injuries

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

[1] Plaintiff-Appellee Carolyn Doss is deceased. Furthermore, the only claim at issue in this appeal is Louis Doss's 42 U.S.C. § 1983 excessive force claim against Helpenstell.

No. 14-51169

caused by the use of excessive force when he arrested Doss for disorderly conduct and resisting arrest with a deadly weapon. We conclude that Helpenstell is not entitled to qualified immunity and thus AFFIRM.

## I.     FACTS AND PROCEEDINGS

Louis Doss operates Mulligan's Pub in Kerrville, Texas. Doss alleged that, during the several years preceding the instant incident, the Kerrville police department and the TABC had sought to have his business shut down and embarked on a campaign of threats and harassment. He further alleged that he resisted these efforts by, *inter alia*, filing a complaint with the TABC that specifically named Scott Helpenstell. Helpenstell alleges that, in connection with TABC's investigation of Mulligan's, he and Doss had an altercation over the phone. As a result of this interaction, Helpenstell considered Doss "a very difficult person to deal with" and a "[v]ery aggressive person—very confrontational type person." Doss does not deny that this conversation occurred, but does dispute Helpenstell's characterization of its tenor.

On January 30, 2011, Doss noticed a TABC vehicle parked at a competing pub in Kerrville and decided "to document this vehicle by photographing it." Doss parked his car in the parking lot of an adjoining business and walked toward the chain-link fence separating the lot from the pub. After Doss took a photograph of the TABC car and license plate, Helpenstell got out of the vehicle, and Doss then took a photo of the agent.

The parties disagree about what occurred next. Helpenstell claims that, as he walked towards the pub, he heard someone say "Hey, I've got you now" in a loud, "threatenin' type manner." He turned around to see a man standing behind a chain-link fence. He states:

2

I see the gentleman standing back there and he looked like an older heavy-set gentleman and he had somethin' in his hand like this. It didn't appear to be a gun but, you know, I couldn't really tell what he was holdin' in his hand. I said, "Who are you? What are you doin'?" He's like, "I don't have to tell you anything but I've got you now." So at that point I thought, okay, I need to investigate this a little bit further. Especially with a rash of violence against police officers that's been going on—just the suspicious activity. I didn't want to walk in the bar and then have somebody come in and confront me there—later on with a bunch of bystanders standin' around, so.

Helpenstell avers that he repeatedly identified himself as a police officer and asked the man who he was. The man started walking away and only answered "I'm Lou Doss" after repeatedly saying "I don't have to tell you anything but I've got you now." At this point, Doss had reached and entered his car. Helpenstell followed him there and, standing by the driver's side window, asked Doss for his driver's license. Doss at first refused, instead replying that he "didn't have to show [Helpenstell] anything." But, he changed his mind and complied, showing Helpenstell his driver's license and concealed handgun license. Helpenstell states:

So I took those items and then I ask him, "Do you have a firearm— uh, do you have a weapon on you at this time?" . . . And at that point he said, "I sure do," and he pulled out a Derringer—2-shot Derringer and held it in the air and just kind of wagged it . . . .

Helpenstell claims that, at this point, he was "scared [he] was gonna get shot" and thought he was "about to be in a gunfight." He drew his pistol and pointed it at Doss, who slowly lowered his gun. Helpenstell next ordered Doss to put his hands on the steering wheel, which Doss did. But, when Helpenstell then ordered him out of the car, Doss refused, saying "I'm not gonna do it. You're gonna have to shoot me. You're gonna have to kill me." Helpenstell continued ordering Doss to get out of the car. Then, finding the window rolled

down, he unlocked the door, opened it, and reached inside the car to pull Doss out.

Helpenstell asserts that Doss resisted him, yelling "Let me go. Let go of me." He then saw Doss's right hand go "down to the area where the pistol was," so Helpenstell "grabbed [Doss] by his collar and around the shoulders and pulled him out of the vehicle."

In contrast, Doss states that Helpenstell immediately recognized him when he noticed Doss taking his picture, and he denies saying anything other than "I took your picture." According to Doss, Helpenstell chased him back to his car and "violently" banged on the window and door, frightening Doss. He also denies ever brandishing his gun, which was inside the center console of his car at all times, and he never took his hands off the steering wheel. Doss further avers that, once Helpenstell opened the car door, he brutally and without provocation punched Doss several times in the head and struck him with his pistol. This attack knocked Doss unconscious, at which point Helpenstell "violently threw [him] to the concrete" outside the car and handcuffed him. Doss was charged with resisting arrest with a deadly weapon and disorderly conduct, but both charges were later dropped.

Doss maintains that, as a result of the altercation, he suffered injuries to his "neck, left elbow, shoulder, writs [sic], thumb, hip, nose, and head causing disorientation and troubled vision." He points to "an impact wound on [his] head," which he claims was the result of Helpenstell's punches to Doss's head, and which is visible in his booking photograph.

Doss filed suit against various parties, including Helpenstell, alleging a number of civil rights claims related to this incident and to the ongoing dispute over Mulligan's Pub. The only one at issue in this appeal, however, is Doss's § 1983 claim against Helpenstell for excessive force. The district court denied

No. 14-51169

Helpenstell's motion for summary judgment based on qualified immunity,[2] and Helpenstell timely appealed.[3]

## II.     ANALYSIS

### A.     Standard of Review

This interlocutory appeal arises from the partial denial of a motion for summary judgment based on qualified immunity, so we have jurisdiction to review only the legal issues raised by the district court's decision.[4]  We review those legal questions *de novo*.[5]  To the extent that the district court's ruling rests on its finding a genuine issue of material fact, we do not review whether the factual dispute is *genuine*; only whether it is *material*.[6]  Finally, as with all motions for summary judgment, we view the evidence in the light most favorable to the nonmovant—in this case, Doss—and affirm the district court's

---

[2] In the same order, the district court granted Helpenstell's motion for summary judgment on the basis of qualified immunity on Doss's § 1983 claim for unlawful arrest. Doss, who is proceeding *pro se*, also urges us to reverse this ruling.  In "'rare and unique' circumstances," we may exercise pendent appellate jurisdiction over a plaintiff's interlocutory appeal of a district court's grant of summary judgment based on qualified immunity. *Gros v. City of Grand Prairie*, 209 F.3d 431, 436 (5th Cir. 2000).  In this case, however, Doss has not filed a notice of appeal with regard to this part of the district court's ruling, so we have no jurisdiction over this putative cross-appeal. *See* FED. R. APP. P. 3; *Heck v. Triche*, 775 F.3d 265, 286–87 (5th Cir. 2014).

[3] Doss also contends that the district court erred by granting Helpenstell leave to file his motion for summary judgment after the deadline for dispositive motions had passed. According to Doss, Helpenstell's defense of qualified immunity was untimely raised and the district court should not have considered it. *See id.*  Striking Helpenstell's entire motion, however, would impermissibly enlarge Doss's rights, as he has not cross-appealed the district court's partial grant of Helpenstell's motion on his unlawful arrest claim. *See Jennings v. Stephens*, 135 S. Ct. 793, 798 (2015) ("An appellee who does not take a cross-appeal may 'urge in support of a decree any matter appearing before the record, although his argument may involve an attack upon the reasoning of the lower court[,]' [b]ut . . . may not 'attack the decree with a view either to enlarging his own rights thereunder or of lessening the rights of his adversary.'" (citation omitted) (quoting *United States v. Am. Ry. Express Co.*, 265 U.S. 425, 435 (1924))).  Thus, we do not consider Doss's challenge to the district court's order granting Helpenstell leave to file his motion for summary judgment.

[4] *See Kinney v. Weaver*, 367 F.3d 337, 346 (5th Cir. 2004) (en banc).

[5] *See id.* at 349.

[6] *See id.* at 346–47.

grant of summary judgment only if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.[7]

The district court ruled that genuine factual disputes existed over "whether the gun was ever brandished, whether Doss's hands remained on the wheel the entire time, whether Doss was screaming things at Helpenstell, whether Doss resisted Helpenstell's attempts to pull him out of the vehicle, and the extent of force that was used." We lack jurisdiction to review whether these disputes are genuine.[8] We do have jurisdiction to review *de novo* the district court's determination that these disputes are material to Helpenstell's qualified immunity defense.[9] Accordingly, we accept Doss's version of the facts—that he (1) never waved the weapon, (2) had his hands on the steering wheel at all times, (3) never screamed at Helpenstell, (4) did not resist Helpenstell's attempt to pull him out of the car, and (5) suffered several strikes to the head while sitting in his vehicle—and we determine whether, even on these facts, Helpenstell is entitled to qualified immunity.[10]

## B.   Qualified Immunity

Government officials may invoke qualified immunity to shield themselves "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[11] "In reviewing a motion for summary judgment based on qualified immunity, we undertake a two-step analysis."[12] In the first step, we ask whether an officer's conduct violated a federal right.[13]

---

[7] *See* FED. R. CIV. P. 56; *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014).

[8] *See Kinney*, 367 F.3d at 346–47.

[9] *See id.*

[10] *See Lytle v. Bexar County*, 560 F.3d 404, 409–10 (5th Cir. 2009).

[11] *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

[12] *Luna v. Mullenix*, 773 F.3d 712, 718 (5th Cir. 2014).

[13] *See id.*

No. 14-51169

In the second step, we ask whether this right was a clearly established right of which a reasonable person would have known.[14]  We may consider these two steps in either order.[15]

"When a plaintiff alleges excessive force during an investigation or arrest, the federal right at issue is the Fourth Amendment right against unreasonable seizures."[16]   Our analysis therefore concerns (1) whether Helpenstell's use of force violated Doss's Fourth Amendment right against unreasonable seizures, and (2) whether using this level of force was unreasonable in light of clearly established Fourth Amendment law at the time of the incident.

## C.    Constitutional Violation

Starting with the first prong of the qualified immunity analysis, we consider whether Helpenstell's actions violated Doss's Fourth Amendment rights.  "To prevail on an excessive force claim, a plaintiff must show: (1) injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable."[17] Only the third element of Doss's excessive force claim appears to be at issue here. Helpenstell contends that his conduct was not excessive because he reasonably believed Doss to have been a threat to his safety—as well as noncompliant with his commands—when he forcibly extracted Doss from the car.

"Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment

---

[14] *See id.*
[15] *See id.*
[16] *Tolan v. Cotton*, 134 S. Ct. 1861, 1865 (2014).
[17] *Tarver v. City of Edna*, 410 F.3d 745, 751 (5th Cir. 2005).

interests' against the countervailing governmental interests at stake."[18]  This fact-specific inquiry requires "careful attention to the . . . circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."[19]

After considering the facts in the light most favorable to Doss,[20] we conclude that the factual disputes identified as genuine by the district court are also material to this reasonableness inquiry.  In particular, there are genuine disputes over whether the gun was ever brandished, where Doss's hands were located, how much force Helpenstell used, and whether his efforts to remove Doss from the car were resisted.  Doss's story, distilled to its essence, describes a violent attack on a person who had a lawful concealed weapon, had not demonstrated hostile intent, and was presenting non-threatening body language.  Furthermore, the minimal severity of Doss's suspected crime, the low level of threat to Helpenstell, and the absence of any indication that Doss was at risk of escape could allow a jury to conclude that Helpenstell's use of force was excessive and unreasonable.[21]  Thus, we agree with the district court

---

[18] *Graham v. Connor*, 490 U.S. 386, 396 (1989) (quoting *Tennessee v. Garner*, 471 U.S. 1, 8 (1985)).

[19] *Id.*

[20] *See Lytle*, 560 F.3d at 409.  Doss also challenges on an evidentiary basis various exhibits submitted by Helpenstell in support of his motion for summary judgment.  The district court did not consider these exhibits in its ruling, however, and we similarly need not rely on them to reach our conclusion.

[21] *See Staten v. Tatom*, 465 F. App'x 353, 359 (5th Cir. 2012) (unpublished) ("The parties present a number of disputes of material fact, including, objectively, whether or how much Plaintiff was resisting, the amount of force Defendant actually used at each stage of the encounter, and whether that force was reasonable.  The parties also dispute whether Plaintiff had his hands hidden upon stepping out of the vehicle, which implicates the 'immediate threat to the safety of the officers.'  Accordingly, we conclude that the district court correctly denied qualified immunity to the Defendant on Plaintiff's excessive force claim." (citation omitted) (quoting *Graham*, 490 U.S. at 396)).

that Doss has established a genuine dispute of material fact over whether his Fourth Amendment rights were violated.

## D.    Clearly Established Law

Turning to the second prong of the qualified immunity analysis, we consider whether Helpenstell's conduct was proscribed by clearly established law at the time of the incident.   In determining what constitutes clearly established law, we first look to the Supreme Court's precedent and then to our own.[22]   If we find no directly controlling authority there, we may rely on decisions from other circuits to the extent that they constitute "a robust 'consensus of cases of persuasive authority.'"[23]

"To be clearly established, a right must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right."[24] Ultimately, our touchstone is "'fair warning': The law can be clearly established 'despite notable factual distinctions between the precedents relied on and the cases then before the Court, so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights.'"[25]

It is "clearly established that [arrestees] ha[ve] a constitutional right to be free from excessive force during an investigatory stop or arrest."[26] This does not end our inquiry, however, as "[t]he Supreme Court has carefully admonished that we are 'not to define clearly established law at a high level of

---

[22] *See Morgan v. Swanson*, 659 F.3d 359, 412 (5th Cir. 2011) (en banc).

[23] *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2084 (2011) (quoting *Wilson v. Layne*, 526 U.S. 603, 617 (1999)).

[24] *Taylor v. Barkes*, 135 S. Ct. 2042, 2044 (2015) (emphasis added) (quoting *Reichle v. Howards*, 132 S. Ct. 2088, 2093 (2012)).

[25] *Kinney v. Weaver*, 367 F.3d 337, 350 (5th Cir. 2004) (en banc) (quoting *Hope v. Pelzer*, 536 U.S. 730, 740 (2002)).

[26] *Tarver v. City of Edna*, 410 F.3d 745, 753–54 (5th Cir. 2005).

generality."'[27]   To defeat qualified immunity, the plaintiff must demonstrate that "it would be clear to a reasonable officer that his conduct was unlawful *in the situation he confronted*."[28]

In *Deville v. Marcantel*, we held that qualified immunity did not protect police officers who broke a driver's-side window and forcibly removed the driver for refusing to get out of the car following a minor traffic violation, when there was no indication that the driver was a flight risk or a danger to the officers.[29] The plaintiff in *Deville* was stopped for speeding and, on being told by one officer to step out of her vehicle, said that she "ha[dn't] done anything wrong," rolled her window up, and called her husband.[30]  After another officer arrived on the scene, she was pulled from the car and slammed against it while being handcuffed, causing an injury to her abdomen.[31]

We acknowledged in *Deville* that "[o]fficers may consider a suspect's refusal to comply with instructions during a traffic stop in assessing whether physical force is needed,"[32] but we also stressed that officers must assess the "*degree* of force" appropriate to the situation.[33]  In concluding that a jury could have reasonably found the force used to be excessive, we placed some weight

---

[27] *Hernandez v. United States*, 785 F.3d 117, 120 (5th Cir. 2015) (en banc) (per curiam) (quoting *al-Kidd*, 131 S. Ct. at 2084).

[28] *Id.* (emphasis added) (quoting *Brosseau v. Haugen*, 543 U.S. 194, 199 (2004) (per curiam)); *see also Brosseau*, 543 U.S. at 198–99 ("[T]here is no doubt that *Graham v. Connor* clearly establishes the general proposition that use of force is contrary to the Fourth Amendment if it is excessive under objective standards of reasonableness.  Yet that is not enough.  Rather, we emphasized in *Anderson* [*v. Creighton*] 'that the right the official is alleged to have violated must have been "clearly established" in a more particularized, and hence more relevant, sense . . . .'" (citation omitted) (quoting *Saucier v. Katz*, 533 U.S. 194, 206 (2001))).

[29] *See* 567 F.3d 156, 167–69 (5th Cir. 2009).

[30] *Id.* at 162.

[31] *See id.*

[32] *Id.* at 167.

[33] *Id.* at 168.

on the officer's quickness to escalate from negotiation to force,[34] the fact that the driver engaged in passive, rather than active, resistance,[35] and the minor nature of her alleged offense.[36]

As we did when evaluating the first prong of the qualified immunity test, we define the situation according to Doss's version of events. Crediting this account, it is clear that, although Helpenstell might have felt threatened by Doss's concealed handgun, Doss did nothing to demonstrate hostile intent, as his hands remained on the wheel of his car. Even though he was not immediately compliant with Helpenstell's request to produce his license or to get out of the vehicle, Doss did nothing to suggest that he intended to flee. That Doss voluntarily gave his concealed handgun permit to Helpenstell along with his driver's license further suggests the absence of danger.

Doss's actions—hands on the steering wheel, no hostile actions, lawful gun in the console—were, like those of the driver in *Deville*, non-threatening and posed little risk of escape. Furthermore, like the officers in *Deville*, Helpenstell quickly escalated the situation, choosing to reach into Doss's car and strike him several times on the head with his pistol, rather than continue to negotiate. And, like the driver in *Deville*, any resistance displayed by Doss was passive, at most. Thus, we conclude that, on January 30, 2011, Helpenstell's conduct, viewed in the light most favorable to Doss, was unreasonable in light of clearly established law.

## III.  CONCLUSION

For the foregoing reasons, we AFFIRM the district court's denial of qualified immunity to Helpenstell on Doss's § 1983 claim of excessive force.

---

[34] *See id.*

[35] *See id.* at 167.

[36] *See id.*