# United States Court of Appeals
# for the Fifth Circuit

———————————

No. 24-20194

———————————

United States Court of Appeals
Fifth Circuit

**FILED**

March 26, 2025

Lyle W. Cayce
Clerk

Jose Martinez,

*Plaintiff—Appellant*,

*versus*

Harris County, Texas; Sheriff Ed Gonzalez; Deputy L. Ybarra; Lieutenant Hernandez; John Doe Harris County Deputies; Deputy Henderson,

*Defendants—Appellees*.

———————————————————————

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:22-CV-547

———————————————————————

Before Wiener, Stewart, and Southwick, *Circuit Judges*.

Jacques L. Wiener, Jr., *Circuit Judge*:[*]

Plaintiff-Appellant Jose Martinez appeals the district court's dismissal of his various claims against Defendants-Appellees Harris County and a few of its law enforcement officers. For the reasons set forth below, we AFFIRM.

———————————————

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 24-20194

## I.   FACTS AND PROCEEDINGS

On a February 2020 night, Jose Martinez was driving when he witnessed multiple adults surrounding a minor male lying in the middle of the street. As he got closer, Martinez noticed that the minor was lying face down with visible scratches on his face and with his hands and feet tied together. Concerned for the minor's safety, Martinez parked his car and offered help.

One of the adults present, Ms. Liliana Melendez, told Martinez that she was the minor's mother and then left to get a law enforcement officer from the nearby middle school. Martinez parked his car and waited for the police to arrive. After Ms. Melendez did not return for a few minutes, Martinez doubted whether she was actually retrieving law enforcement and decided to call 911 himself. *Id.* While he was on that call, Ms. Melendez returned with an Aldine Independent School District ("AISD") officer, which caused the 911 dispatcher to end the call. Ms. Melendez then allegedly yelled to Martinez "You see, I came back with a cop! And I told him that you tried to hit me!" The AISD officer advised Martinez to stay in his car while the officer walked to the other adults and the tied-up minor.

Thereafter, several Harris County Police Department officers arrived on the scene, including Sergeant Ybarra and his trainee, Jacoby Henderson. They were responding to a service call about a woman who found her runaway son and had made a "terroristic threat" claim. Ybarra proceeded to talk to the AISD officer who he claims told him that "a male may have pulled a gun on a female and threatened her."[1] The AISD officer then "pointed out" Martinez as the man who may have made that threat. Ybarra then approached

---

[1] We have Ybarra's hour-long body cam footage from the incident, but many parts of the footage are inaudible, including that initial conversation between Ybarra and the AISD officer.

Martinez, who was sitting in the driver's seat of his parked car with the window rolled down. Ybarra asked Martinez to present identification, but Martinez refused. The same interaction happened one more time before Ybarra opened Martinez's door, put one handcuff on him, and stated "until I can figure out what's going on, get out of the car." With the help of additional officers, Martinez was pushed against his car and fully restrained. Martinez asked twice why he was being arrested, but Ybarra did not respond. Instead, Ybarra told the dispatcher that he had detained a male because "he was resisting."

As another officer held and frisked Martinez, Ybarra took Martinez's driver's license and went over to the passenger side of Ms. Melendez's parked car. When questioned whether Martinez pulled a gun on her, Ms. Melendez stated that he did not but that he threatened her. She then relayed her side of the incident to Ybarra, stating that, after she reported her son missing and chased him for hours, she and the other adults finally restrained him on the ground. Ms. Melendez also explained that, when she first saw Martinez at the scene, she asked him to move out of the way so she could block her son from leaving. After he allegedly refused, she advised him that this situation does not concern him so he could leave. She claimed that Martinez then threatened her and refused to leave the scene. She also mentioned that when she left to retrieve the AISD officer, her daughter witnessed Martinez put something inside the trunk of his car. A subsequent search of Martinez's car, including the trunk, did not reveal a weapon or any contraband.

As another officer escorted Martinez to a police car, Ybarra joined them and Martinez was put into the backseat of the car. Ybarra entered the car in the driver's seat and Martinez complained that his handcuffs were too tight. Less than a minute later, Ybarra opened the door for Martinez to get out and told him to lie on the ground so that his handcuffs could be adjusted.

Martinez informed the sergeant and other officers that he could not lie down or kneel on the ground because he has knee issues. As a result, the officers forcibly walked Martinez to another police car and pushed him over the trunk. Martinez was held in that position as Ybarra adjusted his cuffs, then Martinez was walked back and seated in the police car where he had sat previously. Martinez claimed that those events caused "great pain" as well as "abrasions and bruising," but he did not seek any medical treatment for such injuries.

Several minutes later, Ybarra took Martinez to jail where he was charged with "interference with public duties." Martinez bonded out of jail and, on March 6, 2020, the charge was dismissed for lack of probable cause. Martinez then filed an internal affairs complaint with Harris County, alleging that he should not have been charged with a crime and that the officers had used excessive force against him.

Martinez filed suit in the United States District Court for the Southern District of Texas against Harris County ("the County"), Sheriff Ed Gonzalez, Sergeant Ybarra, Lieutenant John Hernandez, Deputy Jacoby Henderson, and other unnamed Harris County deputies. Martinez alleged (1) several constitutional violations under 42 U.S.C. § 1983, (2) a Texas state assault claim, and (3) claims for supervisory liability. The matter was referred to a magistrate judge, and all named defendants filed motions to dismiss Martinez's claims. On the recommendation of the magistrate judge, the district court granted many of the motions, reasoning that the officers were entitled to qualified immunity or that Martinez had failed to state any claim for supervisory liability. The district court did not grant Ybarra's motion on some of the constitutional claims for excessive force, assault, and malicious prosecution. After discovery, Ybarra filed a motion for summary judgment on Martinez's remaining claims, which the district court granted after holding that the sergeant was entitled to qualified immunity on Martinez's

federal claims and official immunity on Martinez's state claim. The court then dismissed Martinez's case, and Martinez timely appealed.

On appeal, Martinez asks this court to address three issues: whether the district court erred in (1) holding that Ybarra is entitled to qualified immunity for Martinez's constitutional claims of excessive force, false arrest, and malicious prosecution, (2) holding that Ybarra is entitled to official immunity for Martinez's state law assault claim, and (3) dismissing Martinez's supervisory liability claims against Sheriff Gonzalez and Harris County.

## II.    STANDARD OF REVIEW

This court reviews orders granting summary judgment de novo, applying the same standards as the district court. *Miller v. Michaels Stores, Inc.*, 98 F.4th 211, 215–16 (5th Cir. 2024). "When a public official makes 'a good-faith assertion of qualified immunity,' that 'alters the usual summary-judgment burden of proof, shifting it to the plaintiff to show that the defense is not available.'" *Spiller v. Harris Cnty.*, 113 F.4th 573, 575 (5th Cir. 2024). The movant still must demonstrate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Specific to qualified immunity cases, "plaintiff's version of those disputed facts must also constitute a violation of clearly established law." *Joseph ex rel. Joseph v. Bartlett*, 981 F.3d 319, 329–30 (5th Cir. 2020).

This court reviews the grant of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) de novo, "accepting all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiffs." *Meador v. Apple, Inc.*, 911 F.3d 260, 264 (5th Cir. 2018) (citation omitted). A complaint only survives a 12(b)(6) motion if it "pleads factual content that

allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## III.     DISCUSSION

This appeal raises issues of qualified immunity and official immunity, Texas state law, and supervisory and *Monell* liability. We address each issue in turn.

> **a. Sergeant Ybarra is entitled to qualified immunity on Martinez's § 1983 claims for malicious prosecution and excessive force because Martinez does not demonstrate that the sergeant violated any clearly established law.**

Government officials may invoke qualified immunity to protect themselves "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation omitted). When reviewing motions for summary judgment grounded in qualified immunity, this court engages in a two-step analysis. *Shumpert v. City of Tupelo*, 905 F.3d 310, 320 (5th Cir. 2018). We must decide (1) whether an officer's conduct violated a federal right and (2) whether that right was clearly established. *Id.* These steps may be considered in either order. *Id.*

### i.  Malicious Prosecution

Martinez's malicious prosecution claim fails because he cannot demonstrate that Ybarra violated any clearly established law.  The Supreme Court first recognized the federal right to be free from malicious prosecution in 2022. *Thompson v. Clark*, 596 U.S. 36 (2022). The underlying incident in the instant case occurred in 2020. Because this federal right was not recognized until two years later, we hold that Ybarra is entitled to qualified immunity and affirm the district court's dismissal of Martinez's malicious prosecution claim.

No. 24-20194

### ii. Excessive Force

When a plaintiff alleges that excessive force was used during an investigation or arrest, "the federal right at issue is the Fourth Amendment right against unreasonable seizures." *Tolan v. Cotton*, 572 U.S. 650, 656 (2014). We center our discussion on whether Ybarra violated any clearly established Fourth Amendment law.

There are three ways that Martinez could have shown that Ybarra's conduct was proscribed at the time of the incident. First, he could have directed the court to a controlling case that puts the constitutional violation "beyond debate." *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (internal citation omitted). Second, he could have cited to "a robust consensus of persuasive authority" that "defines the contours of the right in question with a high degree of particularity." *Morgan v. Swanson*, 659 F.3d 359, 371-72 (5th Cir. 2011) (en banc). If unable to do so in the previous two ways, he could have pointed to instances in which the alleged constitutional violation was "obvious." *See Brosseau v. Haugen*, 543 U.S. 194, 199 (2004). Because Martinez failed to meet any of those standards, Ybarra is entitled to qualified immunity from Martinez's claim for use of excessive force.

Martinez directs this court to eight cases that he contends demonstrate that Ybarra's conduct was illegal, but we find none of them persuasive. He cites to *Trammell v. Fruge*, 868 F.3d 332 (5th Cir. 2017), *Joseph*, 981 F.3d at 319, and *Darden v. City of Fort Worth, Texas*, 880 F.3d 722 (5th Cir. 2018), to assert that this circuit has "clearly established that it is objectively unreasonable for officers to tackle an individual who is not fleeing, not violent, and not aggressive." However, there is no allegation that Ybarra ever tackled Martinez., so these cases are not instructive.

Neither do the rest of his cited cases support his assertion because law enforcement in those cases used a much higher degree of force than Ybarra used against Martinez. In *Doss v. Helpenstell*, the officer hit the suspect so

7

many times that it caused him to lose consciousness. 626 F. App'x 453, 455 (5th Cir. 2015) (per curiam) (unpublished). In both *Ramirez v. Martinez*, 716 F.3d 369 (5th Cir. 2013), and *Newman v. Guedry*, 703 F.3d 757 (5th Cir. 2012), the officers tased the suspect. In *Deville v. Marcantel*, 567 F.3d 156 (5th Cir. 2009) (per curiam), the officers broke the suspect's car window and threw her against her car so violently that she could not walk without stumbling. In *Goodson v. City of Corpus Christi*, 202 F.3d 730 (5th Cir. 2000), the officers broke the suspect's shoulder. For Martinez to use this string of precedent as support, there must be an overlap between the underlying facts of this case and those of the other cases at "a sufficiently high level of specificity to put a reasonable official on notice that his conduct is definitively unlawful." *Vincent v. City of Sulphur*, 805 F.3d 543, 547 (5th Cir. 2015). The acts of those officers were markedly more horrific than Ybarra's pulling Martinez out of his vehicle and handcuffing him after he failed to provide his identification despite the sergeant's multiple requests. None of those cases support Martinez's position.

A more analogous case is *Solis v. Serrett*, 31 F.4th 975 (5th Cir. 2022). There, an officer conducted a traffic stop of a car in which Solis was a passenger. *Id.* at 978-79. During the stop, and while outside the car, Solis was arrested for public intoxication. *Id.* at 979. When the officer grabbed her arm to arrest her, Solis fell to the ground. *Id.* That officer then pressed his knee into her back while another officer handcuffed her. *Id.* In her § 1983 excessive force suit, Solis alleged that she experienced back and wrist pain because of the officers' actions. *Id.* Another panel of this court, after distinguishing several of the cases Martinez's presently cites, held that Solis did not demonstrate that the officers' conduct violated any of her "clearly established" rights. *Id.* at 980, 984-88.

Here, Ybarra used even less force than the officers used against Solis. Unlike Solis, Martinez never fell to the ground because of police action.

Unlike the officers in *Solis*, no Harris County officers put their knees into Martinez's back. Because we previously held that Solis failed to "clearly establish" any federal right that the police officers violated, it follows that Martinez has not "clearly established" any right that Ybarra violated. The police action he faced was less severe than what Solis faced.

None of the cases cited by Martinez or decided by this court demonstrate that Martinez was subjected to a constitutional violation that was (1) "beyond debate," (2) arising from "a robust consensus of persuasive authority," or (3) "obvious." *See Morgan*, 659 F.3d at 371–72; *Brosseau*, 543 U.S. at 199. We conclude that Ybarra is entitled to qualified immunity regarding Martinez's excessive force claim.[2]

> **b. Sergeant Ybarra is entitled to qualified immunity on Martinez's § 1983 claim for false arrest because Ybarra had probable cause to arrest Martinez.**

We now address Martinez's § 1983 false arrest claim. The district court dismissed this claim at the 12(b)(6) stage after concluding that the sergeant was entitled to qualified immunity. As mentioned above, when qualified immunity is invoked, the plaintiff must show that (1) the officer's conduct violated the plaintiff's constitutional right and (2) "the unlawfulness of the conduct was 'clearly established at the time.'" *Ramirez v. Escajeda*, 921 F.3d 497, 500 (5th Cir. 2019) (quoting *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018)).

"The right to be free from arrest without probable cause is a clearly established constitutional right." *Westfall v. Luna*, 903 F.3d 534, 542 (5th Cir. 2018) (per curiam) (internal quotation omitted). "Probable cause exists

---

[2] We decline to discuss the first prong of the qualified immunity inquiry as Martinez has failed to demonstrate the second prong. *Solis*, 31 F.4th at 981 ("The court need not decide the first question before the second, and it may decide the case solely on the basis that the right was not clearly established.").

when the totality of facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense." *Resendiz v. Miller*, 203 F.3d 902, 903 (5th Cir. 2000) (per curiam). Ybarra is entitled to qualified immunity unless he lacked probable cause to arrest Martinez. *See McCullough v. Wright*, 824 F. App'x 281, 284 (5th Cir. 2020) (per curiam) (unpublished). Our precedent also provides that Ybarra "can receive the benefit of qualified immunity even if probable cause was absent if a reasonable person in his position would have believed his conduct was constitutional in light of clearly established law." *Id.* at 285 (cleaned up).

Under Texas Penal Code Section 38.15(a)(1), a person commits an "interference with public duties" "if the person with criminal negligence interrupts, disrupts, impedes, or otherwise interferes with . . . a peace officer while the peace officer is performing a duty or exercising authority imposed or granted by law." Tex. Penal Code § 38.15(a)(1). We have previously held that interference requires more than just speech alone. *Id.* at § 38.15(d); *see also Freeman v. Gore*, 483 F.3d 404, 414 (5th Cir. 2017) (recognizing that one does not commit such an interference by "merely arguing with police officers"). "And 'failing to comply with an officer's instruction, made within the scope of the officer's official duty and pertaining to physical conduct rather than speech'. . . constitute[s] interference." *McCullough*, 824 F. App'x at 285 (quoting *Childers v. Iglesias*, 848 F.3d 412, 415 (5th Cir. 2017)).

Here, Ybarra and his team responded to the scene because of a "terroristic threat."[3] When investigating the alleged perpetrator, Ybarra approached Martinez while he was seated in his car and asked him to identify

---

[3] Under Texas Penal Code § 22.07, a person commits a "terroristic threat" "if he threatens to commit any offense involving violence to any person or property with intent to . . . place any person in fear of imminent serious bodily injury." Tex. Penal Code § 22.07(a)(2).

himself. Martinez refused. This interaction happened at least one more time before Ybarra pulled Martinez out of his car and handcuffed him for violating § 38.15. In our view, Martinez's conduct rises to interference because when Ybarra instructed him to produce identification multiple times, he did not comply. *See McCullough*, 824 F. App'x at 285; *cf. Bailey v. Ramos*, 125 F.4th 667, 677-78 (5th Cir. 2025) ("Texas courts have found that failure to comply with an officer's instructions violates Texas Penal Code § 38.15 and is not protected speech.") (cleaned up). Martinez's failure to produce any identification impeded Ybarra's duty to investigate the alleged "terroristic threat." *See Childers*, 848 F.3d at 415. We therefore conclude that Ybarra is entitled to qualified immunity because probable cause for Martinez's arrest under § 38.15 existed at the time.

### c. Sergeant Ybarra is entitled to official immunity on Martinez's Texas law assault claim because he was acting in "good faith" when effectuating Martinez's arrest.

Martinez next asserts that the district court erred when it held that Ybarra was entitled to official immunity on his state assault claim. We disagree. To prevail on a civil assault claim in Texas, Martinez must establish the same elements that are required for criminal assault. *Rockwell v. Brown*, 664 F.3d 985, 993 (5th Cir. 2011). Texas Penal Code § 22.01 explains that a person may commit assault in two ways: (1) if he "intentionally or knowingly causes physical contact with another when the person knows or should reasonably believe that the other will regard the contact as offensive or provocative;" or (2) if he "intentionally, knowingly, or recklessly causes bodily injury to another." Tex. Penal Code § 22.01(a)(1), (3).

Official immunity in Texas is an affirmative defense and protects government employees from personal liability for lawsuits "arising from the performance of their (1) discretionary duties in (2) good faith as long as they are (3) acting within the scope of their authority." *City of Lancaster v.*

*Chambers*, 883 S.W.2d 650, 653 (Tex. 1994). Such employees are entitled to official immunity so long as they "conclusively establish" those three elements. *Telthorster v. Tennell*, 92 S.W.3d 457, 461 (Tex. 2002). Martinez's bare contention on appeal, without further explanation, is that Ybarra failed to "conclusively establish" this affirmative defense.

The only element in dispute is whether Ybarra was acting in good faith. The good faith test for official immunity is "derived substantially" from the test for qualified immunity for § 1983 actions. *Chambers*, 883 S.W.2d at 656. "The main difference, however, is that official immunity does not incorporate the requirement that the right alleged to have been violated be clearly established." *Rockwell*, 664 F.3d at 993. The test hinges on "the objective reasonableness of the officer's conduct." *Id.* (cleaned up).

To prevail, Ybarra must show that "a reasonably prudent officer, under the same or similar circumstances, *could* have believed that [his conduct] was justified." *Id.* (emphasis in original) (cleaned up). If Ybarra meets that burden, Martinez must "show that no reasonable person in the officer's position could have thought the facts were such that they justified the officer's acts." *Id.* (cleaned up).

We conclude that Ybarra is entitled to official immunity. As stated, Ybarra was investigating Martinez because he had reason to believe Martinez was armed and made a "terroristic threat." When Martinez did not provide his identification to Ybarra, the sergeant pulled him out of his car with force that only caused Martinez minor injuries. A reasonably prudent officer in Ybarra's shoes could believe that his actions were justified. *Rockwell*, 664 F.3d at 993. Martinez does not make any showing "that no reasonable person in [Ybarra's] position could have thought" otherwise. *Id.* We therefore affirm the district court's dismissal of Martinez's assault claim.

No. 24-20194

**d. The district court correctly dismissed Martinez's supervisory liability claims against Sheriff Gonzalez and the County because Martinez failed to state a claim.**

Martinez appeals the district court's dismissal of some of his claims against (1) Sheriff Gonzalez, acting in his official capacity, and (2) the County.[4] Claims against government officers in their official capacity are "another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) (cleaned up). Martinez's claims against Gonzalez are therefore technically against the County. Regardless, this section is organized by his claims against Gonzalez and the County, respectively, because he attempts to raise different claims against each of them.

**i. Martinez's claim against Sheriff Gonzalez fails because he does not plead, beyond speculation, that the sheriff played a policymaking role that led to his arrest.**

Supervisory officers can only be held liable if they (1) "affirmatively participate in acts that cause a constitutional deprivation" or (2) "implement unconstitutional policies that causally result in the plaintiff's injury."[5] *Mouille v. City of Live Oak*, 977 F.2d 924, 929 (5th Cir. 1992).

---

[4] While Martinez's complaint suggests that he attempted to sue Gonzalez in his individual capacity, Gonzalez was never individually listed as a party to this suit. Martinez's claims against Gonzalez only relate to his official duties and, in his brief, Martinez does not raise any assertion against Gonzalez, individually. Additionally, Martinez does not appeal the dismissal of his claim against the County regarding its training and supervision of employees. He has thus waived the right to make these arguments, and no further discussion is necessary on such claims. *U.S. v. Tinghuie Xie*, 942 F.3d 228, 237 (5th Cir. 2019) ("Arguments not briefed are waived.").

[5] Sheriff Gonzalez is barred from being vicariously liable for the actions of his subordinates. *Mouille*, 977 F.2d at 929 ("Well settled Section 1983 jurisprudence

Martinez does not dispute Gonzalez's lack of "affirmative[] participat[ion]" in his arrest. Instead, he claims that Gonzalez instituted an unconstitutional policy that led to his injury. Martinez asserts that the Harris County Sheriff's Office has "a policy of refusing to investigate complaints to the internal affairs division ("IAD") if a criminal case is pending against them." Without addressing the constitutionality of this policy, Martinez fails to state a plausible claim against Sheriff Gonzalez because he cannot show how this policy—even if attributed to Gonzalez—led to his arrest.

Martinez claims that "Gonzalez's policy of preventing IAD investigations . . . directly led to the officers here charging and maliciously prosecuting [him] with crimes that they know he did not commit in order to falsely arrest him and use excessive force against him and avoid accountability." This assertion alone does not demonstrate that Gonzalez's actions "causally resulted" in Martinez's arrest, because Martinez did not file his IAD complaint until after the charges against him were dropped. Martinez's citation to *Black v. Stephens* is unavailing because the plaintiff there filed his internal affairs complaint with the police department before the criminal charges against him were dropped. 662 F.2d 181, 189-92 (3rd Cir. 1981). It follows that the County's policy would not have prevented any investigation into Martinez's complaint. Any finding that Gonzalez implemented that policy and that such implementation led to his arrest would be based purely on speculation. We therefore affirm the district court's dismissal of Martinez's claim of supervisor liability against Gonzalez.[6] *Alexander v. City of Round Rock*, 854 F.3d 298, 303 (5th Cir. 2017)

---

establishes that supervisory officials cannot be held vicariously liable for their subordinates' actions."); *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691–95 (1978).

[6] Because there is no plausible connection between such policy and Martinez's arrest, we need not discuss the constitutionality of the policy at issue.

("Dismissal is appropriate only when a plaintiff. . . has failed to raise a right to relief above the speculative level.") (internal quotation omitted).

> ### ii. Martinez's *Monell* claim against the County fails because he does not satisfactorily plead that any County policy was the "moving force" behind his arrest.

Lastly, Martinez contends that the district court erred when it dismissed his *Monell* claim against Harris County. "To establish municipal liability under § 1983, a plaintiff must show the deprivation of a federal protected right caused by action taken pursuant to an official municipal policy." *Valle v. City of Houston*, 613 F.3d 536, 541 (5th Cir. 2010) (internal quotation omitted); *see Monell*, 436 U.S. at 694. Martinez must identify "(1) an official policy (or custom), of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose moving force is that policy or custom." *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002) (internal quotation omitted). "Generally, a plaintiff must show that the policy was implemented with 'deliberate indifference' to the 'known or obvious consequences' that a constitutional violation would result." *Ford v. Anderson Cnty.*, 102 F.4th 292, 319-20 (5th Cir. 2024) (citing *Alvarez v. City of Brownsville*, 904 F.3d 382, 390 (5th Cir. 2018) (*quoting Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 407 (1997))). To prove "deliberate indifference based on a single incident requires showing that the injury suffered was a 'highly predictable' consequence of the policy." *Id.* (internal citation omitted).

Martinez once again contends that the County has a policy of delaying internal investigations when the complainant has criminal charges pending against him. However, he failed to plead any facts that demonstrate how such policy was a "moving force" behind his arrest because he did not file his complaint against the County until after his criminal charges were dismissed.

*See Pineda*, 291 F.3d at 328. Neither has Martinez pleaded that his arrest was a "highly predictable consequence" of this alleged policy. Accordingly, we affirm the district court's dismissal of his *Monell* liability claims against the County. *See Ford*, 102 F.4th at 319-20.

## IV.    CONCLUSION

For the foregoing reasons, the district court's judgment is AFFIRMED.